EASTERN STEEL PRODUCTS CORPORATION v. JAMES F. CHESTNUTT AND B. S. HARRISON T/A SAMPSON MASTER SWITCH COMPANY.

(Filed 6 April, 1960.)

**1. Appeal and Error § 16—**

The granting of *certiorari* to review an order denying motion to strike certain paragraphs from a pleading in effect grants the right of immediate appeal, which is governed by the Rules of Practice in the Supreme Court, and the failure of the record to contain assignments of error is ground for dismissal. Rule 19 (3).

**2. Appeal and Error § 2—**

The Supreme Court, in the exercise of its supervisory jurisdiction, may decide questions on the merits even though the procedure prescribed by the Rules of Practice as necessary to present such questions has not been followed.

**3. Pleadings § 34—**

Allegations relating to matters which the pleader is precluded from showing in evidence because of the parol evidence rule should be stricken upon motion.

**4. Fraud § 5—**

An essential element of actionable fraud is that the party to whom the alleged false and fraudulent representation is made must reasonably rely thereon and be deceived thereby to his injury.

**5. Fraud § 8—**

It is not sufficient to allege the elements of fraud in general terms, but it is required that the pleader allege facts, which if true, would constitute fraud.

**6. Cancellation and Rescission of Instruments §§ 2, 8—**

Defendants' allegations to the effect that they were induced to sign a novation because of false and fraudulent representations by plaintiff in regard to a certain item which defendants disputed prior to and at the time of the execution of the agreement, is insufficient to state a cause of action to rescind the novation contract, since in such instance defendants could not have been deceived by and could not have relied upon such representations.

**7. Accord and Satisfaction § 1:   Compromise and Settlement—**

A compromise and settlement must be based upon a disputed claim; an accord and satisfaction may be based on an undisputed or liquidated claim.

**8. Contracts § 19—**

Where, after differences between the parties to a contract, they execute a new agreement prescribing the rights and liabilities of the parties in regard to the entire subject matter of the original agreement, the new agreement amounts to a novation and precludes the assertion of any rights under the original agreement so long as the novation stands.

**9. Evidence § 27—**

Whether the rule precluding parol evidence in contradiction of or at variance with a written agreement of the parties be regarded as a rule of evidence or a rule of substantive law, allegations in a pleading relating to matters which the pleader is precluded from establishing because of the rule should be stricken on motion.

On writ of *certiorari,* treated as appeal, to review order of *Bone, Resident Judge,* signed August 4, 1959, in Chambers, in action pending in NASH Superior Court.

The writ of *certiorari* was allowed September 30, 1959. This Court, upon application, permitted counsel then representing defendants to withdraw. Thereafter, defendants retained their present counsel. Upon their application, the case was continued to and argued at Spring Term, 1960.

The questions presented relate solely to the pleadings.

Defendants, after answering the eight paragraphs of the complaint, alleged (1) a further answer, consisting of thirty-one paragraphs designated I through XXXI, and (2) a gross action and counterclaim consisting of four paragraphs designated I through IV.

The hearing was on plaintiff's motion (eighteen paragraphs) to strike from the answer all or portions of fourteen designated paragraphs of the further answer and all or portions of the four paragraphs of the cross action and counterclaim.

Treating each paragraph as a separate motion, the court entered an order allowing "motions numbered 1, 5, 6, 8, 9 and 11," thereby striking the allegations to which these motions related, but denying "motions numbered 2, 3, 4, 7, 10, 12, 13, 14, 15, 16, 17 and 18." Plaintiff's exception to Judge Bone's order is in these words: "The PLAINTIFF excepts to that portion of the foregoing order which denies the plaintiff's motions numbered 2, 3, 4, 7, 10, 12, 13, 14, 15, 16, 17 and 18."

The relevant portions of the pleadings will be set forth in the opinion.

*Battle, Winslow, Merrell, Scott & Wiley for plaintiff, appellant.*

*Nance, Barrington & Collier and Rudolph G. Singleton, Jr., for defendants, appellees.*

BOBBITT, J.  The issuance of our writ of *certiorari,* in effect, granted to plaintiff the right of immediate appeal from the order of Judge Bone. In perfecting such appeal, Rules of Practice in the Supreme Court, 221 N.C. 544, apply. *Collier v. Mills,* 245 N.C. 200, 95 S.E. 2d 529. The record before us contains no assignment(s) of error. This is ground for dismissal for failure to comply with Rule 19(3). As to what is required in respect of assignments of error, see *Nichols v. McFarland,* 249 N.C. 125, 105 S.E. 2d 294, and *Hunt v. Davis,* 248 N.C. 69, 102 S.E. 2d 405.

Even so, this Court, in the exercise of its general supervisory jurisdiction (N. C. Constitution, Article IV, Section 8), has decided to consider and pass upon the questions raised by plaintiff's exceptions. Hereafter, it should be clearly understood that the rules applicable to an appeal apply to a review upon *certiorari* where such review, permitted under Rule 4(a) (242 N.C. 766), is in effect an appeal.

It was alleged and admitted that plaintiff and defendants entered into a contract whereby plaintiff would manufacture switches in accordance with a model switch furnished by defendants, for distribution by defendants.

Plaintiff, in substance, alleged: Differences arose between plaintiff and defendants, defendants contending they had been damaged on account of delays in delivery and defects in the switches manufactured by plaintiff and suggested "the arrangement be terminated." Plaintiff asserted a claim for $20,670.07 for the manufacture of dies and switches "in accordance with the arrangements between the parties." "Extended negotiations were had between the parties and finally all their differences were compromised and settled by execution of a contract, prepared by the defendants, on the 28th day of July 1958," as per copy attached to and made a part of the complaint.

Plaintiff, alleging that it performed its obligations under the contract of July 28, 1958, seeks to recover a balance of $11,725.00, with interest, allegedly owing by defendants under the terms of said contract.

The contract of July 28, 1958, in which plaintiff is designated party of the first part and Sampson Master Switch Company is designated party of the second part, in substance, provides: The party of the first part has sold and delivered to the party of the second part "the

goods and chattels following, namely: All of the dies and jigs in its possession for the manufacture of Sampson Master Switches and also approximately 3,300 Sampson Master Switches." Title to the said goods and chattels "is reserved by and remains vested in the said party of the first part until the payment in full of the sum of FOURTEEN THOUSAND DOLLARS ($14,000), which amount is unpaid on the purchase price of the said goods and chattels, and will become payable as follows: $3.50 per switch as delivered to the party of the second part, with purchase price of switches to be secured by notes executed by B. S. Harrison payable thirty (30) days after delivery date of varying numbers of switches until all of switches manufactured by party of the first part have been delivered to party of the second part." Provision is made, in the event of default, for the repossession of said goods and chattels by the party of the first part and for a foreclosure sale thereof. The contract contains these provisions: (1) "It is mutually agreed that the party of the second part may return to party of the first part all switches that are not in a saleable condition and that said switches will be put in a saleable condition by party of the first part." (2) ". . . upon delivery of approximately 3300 switches we (plaintiff) shall collect $1.50 for tooling cost on all switches sold by Sampson Master Switch Company whether made by Eastern Steel Products Corporation or not, until such time as the full amount of $14,000 is paid." The contract of July 28, 1958, contains no reference to a prior contract or prior dealings between the parties.

Answering, defendants admitted that "650 switches were delivered and paid for"; that defendants had sold "approximately 150 switches since July 28, 1958"; and that plaintiff's demand for payment had been refused. Except as stated, the answer proper denies the material allegations of the complaint, alleging "that the true facts relative thereto will appear in the further answer, defense, and counterclaim of these answering defendants."

In their further answer (considering only the portions thereof not stricken by Judge Bone's order), defendants alleged that plaintiff had breached its original contract with defendants in that it did not make delivery as required by the contract and that the switches when delivered were defective. They alleged, *inter alia*, that "it soon became apparent that the plaintiff neither had the knowledge, personnel or quality control to produce a product in conformity with the specifications furnished it by the defendants," and that "the plaintiff and defendants agreed that the contract should be rescinded, and they entered into negotiations to adjust and settle their differences"; and that, "although the defendants were not compelled to do anything

further, they agreed to reimburse the plaintiff for the actual and reasonable costs incurred up to the date of rescission to the extent these costs were properly proven." Defendants admitted execution of the contract of July 28, 1958, but alleged they did so under the following circumstances: Plaintiff submitted "a large ledger sheet, on which were listed the alleged actual and reasonable expenses of plaintiff. The defendants again requested supporting evidence of the correctness of the figures, but plaintiff stated that they were still not available. The figures on the ledger sheet totaled $20,670.07. The defendants informed the plaintiff that the charges were excessive and incorrect. In a spirit of compromise the defendants executed the alleged contract sued upon, (on the express condition that the plaintiff submit to the defendants sworn proof of the correctness of the figures upon which the compromise was based and on the absolute assurance of the plaintiff to the defendant(s) of the truthfulness and correctness of said figures. The defendants have repeatedly requested that the plaintiff submit the sworn proof of the figures as agreed, but the plaintiff has refused and failed to submit said sworn proof, and continues to do so.)"

Plaintiff's motion No. 2 is directed to that portion of paragraph XV of the further answer indicated above by parentheses.

Plaintiff's motion No. 3 is directed to paragraph XVI of the further answer wherein defendants alleged generally that they were induced to sign the contract of July 28, 1958, by the false and fraudulent representations of plaintiff in respect of the amount of its costs.

Plaintiff's motion No. 4 is directed to paragraph XVII of the further answer, viz.: "That the defendants have no means of discovering the true costs incurred by the plaintiff in tooling and for dies and jigs, but they are informed and believe that the reasonable cost therefor is $5,000, and upon such information and belief allege that the plaintiff should not be entitled to any larger sum, if it is entitled to any sum at all."

In defendants' allegations of the further defense, to which plaintiff's motions numbered 7, 10, 12, 13 and 14 are directed, and in the four paragraphs wherein defendants assert a cross action for damages of $105,042.50, to which plaintiff's motions numbered 15, 16, 17 and 18 are directed, defendants allege breaches by plaintiff of the *original* contract between the parties and consequential damages.

Defendants, in their prayer for relief, in addition to the recovery of damages, ask that the court adjudge that "the title to the dies and jigs hereinbefore referred to be vested in the defendants." However, no facts are alleged which would entitle defendants to such

adjudication apart from the provisions of the contract of July 28, 1958. This portion of defendants' prayer would seem to be at cross-purposes with other allegations of their pleading.

True, the burden of proof was on plaintiff to establish its allegation that the written contract of July 28, 1958, was executed as a compromise settlement of the dispute between the parties as to their rights and liabilities arising out of the original contract. *Winkler v. Amusement Co.*, 238 N.C. 589, 79 S.E. 2d 185. Even so, it appears affirmatively from defendants' allegations, quoted above, that the negotiations leading up to the execution of the written contract of July 28, 1958, were for the purpose of adjustment and settlement of the differences that had arisen between the parties.

It is noted that, under the contract of July 28, 1958, plaintiff agreed to sell and deliver to defendant some 3,300 Sampson Master Switches and also all of the dies and jigs in its possession for the manufacture of the Sampson Master Switches, for which defendants agreed to pay $14,000.00. Defendants, after alleging they had no means of discovering the true costs incurred by plaintiff in tooling and for dies and jigs, alleged in paragraph XVII of the further answer that "they are informed and believe that the reasonable cost therefor is $5,000." It is noted that no reference is made to plaintiff's costs in connection with the manufacture of the 3,300 Sampson Master Switches, nor do defendants allege any other fact relevant to their general allegations as to false and fraudulent representations.

If, disregarding the written contract of July 28, 1958, the actual agreement was as alleged by defendants, it would seem that defendants would be obligated to pay plaintiff under the terms thereof "the actual and reasonable costs incurred up to the date of rescission," whether such costs amounted to $20,670.07, or $14,000.00, or a lesser amount; and no benefit would accrue to defendants unless plaintiff's costs were less than $14,000.00.

While defendants alleged they signed the contract of July 28, 1958, *upon the express condition, etc.* (compare *Bailey v. Westmoreland*, 251 N.C. 843, 112 S.E. 2d 517, and cases cited), the sole ground on which they assert the invalidity of said written contract is that the figure of $20,670.07, then asserted by plaintiff to be the amount of its actual and reasonable costs and then disputed by defendants, was excessive. The agreement, *as alleged by defendants,* was that they were "to reimburse the plaintiff for the actual and reasonable costs incurred up to the date of rescission to the extent these costs were properly proven." Defendants' allegations come to this: The writing obligated them to pay $14,000.00 in the event plaintiff's actual and

reasonable costs were $20,670.07. Defendants' allegations are silent as to what they agreed to pay if plaintiff's actual and reasonable costs were less than $20,670.07. Mindful of the fact that defendants alleged the negotiations were for the purpose of adjustment and settlement of their differences with plaintiff, it would appear that $14,000.00 was adopted as a compromise figure. In any event, the oral agreement alleged by defendants is in direct conflict with the provisions of the written contract of July 28, 1958.

"When the terms of a (written) contract are established, the negotiations which produced the contract cannot enlarge or restrict its provisions and are therefore not competent as evidence in an action to enforce it." *Bank v. Slaughter,* 250 N.C. 355, 108 S.E. 2d 594, and cases cited.

There is much authority for the proposition that the so-called parol evidence rule is not a rule of evidence but a rule of substantive law. Wigmore on Evidence, Third Edition, Vol. IX, § 2400; Williston on Contracts, Revised Edition, Vol. 3, § 631; Stansbury, North Carolina Evidence, § 251. There are North Carolina decisions which treat it solely as a rule of evidence. *Miller v. Farmers Federation,* 192 N.C. 144, 134 S.E. 407. See "The Parol Evidence Rule in North Carolina," Chadbourn and McCormick, 9 N.C.L.R. 151, footnote 4 on page 152. However, in *Williams v. McLean,* 220 N.C. 504, 17 S.E. 2d 644, cited with approval in *Bost v. Bost,* 234 N.C. 554, 67 S.E. 2d 745, this Court said: "This written designation of the terms of the contract was executed by the defendants and accepted by the plaintiff. It is established, not only as a rule of evidence, but also as one of substantive law, that matters resting in parol leading up to the execution of a written contract are considered merged in the written instrument. 2 Williston on Contracts, secs. 613-632."

Whether the so-called parol evidence rule is a rule of evidence or a rule of substantive law or both need not be explored further on this appeal. One of the rules applicable when passing upon a motion under G.S. 1-153 to strike allegations of a pleading is this: "An allegation in a pleading is irrelevant and immaterial whenever it is of such nature that evidence in support thereof would be incompetent at the hearing. Nothing ought to remain in a pleading, over objection, which is incompetent to be shown in evidence." *Penny v. Stone,* 228 N.C. 295, 45 S.E. 2d 362; *Daniel v. Gardner,* 240 N.C. 249, 81 S.E. 2d 660. Absent sufficient allegations that the execution of the written contract of July 28, 1958, by defendants, was induced by plaintiff's false and fraudulent representations, defendants' allegations as to a contemp-

oraneous oral agreement in conflict with the terms thereof should have been stricken.

An essential element of actionable fraud is that the party to whom the alleged false and fraudulent representation is made must reasonably rely thereon and be deceived thereby to his injury. *New Bern v. White,* 251 N.C. 65, 110 S.E. 2d 446, and cases cited. Here, the alleged fraud is based solely on plaintiff's representation during settlement negotiations that its actual and reasonable costs were $20,670.07. Defendants alleged they disputed and challenged the truthfulness of this representation prior to and contemporaneously with the execution of the written contract of July 28, 1958. The fact that the written contract obligated defendants to pay $14,000 negatives defendants' allegation that it relied upon plaintiff's representation that its actual and reasonable costs (which defendants alleged they agreed to pay) amounted to $20,670.07.

It is not sufficient to allege the elements of fraud in general terms. It is required that facts be alleged which, if true, would constitute fraud. *Calloway v. Wyatt,* 246 N.C. 129, 97 S.E. 2d 881, and cases cited. Since no facts are alleged by defendants as a basis for their allegations as to fraud except the alleged falsity of the representation that plaintiff's costs amounted to $20,670.07, a matter disputed by defendants prior to and at the time of their execution of the written contract of July 28, 1958, providing for the payment by defendants of $14,000.00, defendants did not allege facts sufficient to support their general allegations as to fraud.

There is discussion in the briefs bearing upon the subject of accord and satisfaction. This distinction is noted: "Compromise is distinguished from accord and satisfaction by the fact it must be based on a disputed claim, while an accord and satisfaction may be based on an undisputed or liquidated claim." 1 Am. Jur., Accord and Satisfaction § 2; 11 Am. Jur., Compromise and Settlement § 2. *Bizzell v. Bizzell,* 247 N.C. 590, 601, 101 S.E. 2d 668. Here, the allegations of both plaintiff and defendants are to the effect that the agreement of July 28, 1958, was entered into by way of adjustment and settlement of their then existing differences. "Where the arrangement of compromise remains purely executory and there has been a previous contractual relation existing among the parties, the compromise itself amounts to a new contract or novation." 11 Am. Jur., Compromise and Settlement § 2.

For the foregoing reasons, plaintiff's motions numbered 2, 3 and 4 should have been allowed. It follows that plaintiff's motions numbered 7, 10, 12, 13, 14, 15, 16, 17 and 18 should have been allowed

since, unless and until the written contract of July 28, 1958, is set aside, defendants may not allege facts relevant solely to alleged breaches by plaintiff of their original contract. Moreover, if the agreement of compromise and settlement was as alleged by defendants, defendants would not be entitled to recover damages for breaches of the original contract but rather would be required to pay no more than the amount established as plaintiff's "actual and reasonable costs incurred up to the date of rescission." It is noted that defendants have made no allegation as to the correct amount thereof, their allegation being that $20,670.07 is incorrect and excessive. Defendants' allegations, challenged by plaintiff's said motions, are deemed prejudicial and should be stricken. It is so ordered.

Nothing stated herein is intended to preclude defendants from asserting all rights available to them under the written contract of July 28, 1958. Defendants, if so advised, may apply under G.S. 1-163 for leave to amend their pleading and so, perchance, clarify their position.

The ruling of the court below in respect of all of plaintiff's said motions is reversed.

Reversed.