BAILLIE LUMBER COMPANY, INC. v. KINCAID CAROLINA
CORPORATION

No. 6927SC87

(Filed 30 April 1969)

**1. Accord and Satisfaction § 2— burden of proof**

The burden of proving the defense of accord and satisfaction is on the
debtor.

**2. Accord and Satisfaction § 2— question of law and fact**

The question of accord and satisfaction may be one of fact and of law.

**3. Trial § 57— trial by agreement of the parties — role of the trial
judge**

In a trial wherein the parties submitted to the court an agreed state-
ment of the facts and issues to be answered by the court, the trial judge
is the judge of both the law and the facts.

**4. Appeal and Error § 57— review of findings of fact**

Where the facts supported by competent evidence are sufficient to sup-
port the conclusions of law and the judgment, an assignment of error to
the findings of fact and to the failure to find other facts will be over-
ruled.

**5. Accord and Satisfaction § 1; Compromise and Settlement § 1— dis-
puted and undisputed claims**

A compromise and settlement must be based on a disputed claim; an
accord and satisfaction may be based on an undisputed or liquidated
claim.

**6. Compromise and Settlement § 1— statutory settlement**

G.S. 1-540 applies as a compromise and settlement when an agreement
is made and accepted.

**7. Accord and Satisfaction § 1— essentials of the accord — offer and
acceptance**

An offer by a debtor to pay its creditor thirty-five per cent of the un-
disputed contract price of lumber on condition that within sixty days from
August 16 a sufficient number of its other creditors accept a similar offer
of thirty-five per cent in full settlement of their accounts, and the reply
by the creditor agreeing to accept thirty-five per cent of the account in
settlement of the debt provided that payment be made on or before
September 20, do not constitute an agreement such as will support the
debtor's plea of accord and satisfaction.

**8. Accord and Satisfaction § 1— essentials of the agreement and sat-
isfaction**

An accord and satisfaction is composed of two elements: the accord
which is the agreement and the satisfaction which is the execution or
performance of the agreement.

**9. Accord and Satisfaction § 1— payment on undisputed claim — common law rule**

Under the common law, an agreement to receive a part of a debt due in lieu of the whole of an undisputed, as distinguished from a disputed debt due, was held to be a *nudum pactum* as to all in excess of the sum actually paid.

**10. Accord and Satisfaction § 1— definition of liquidated account**

An account is liquidated when the amount thereof has been fixed by agreement or if it can be exactly determined by the application of rules of arithmetic or of law.

**11. Accord and Satisfaction § 1— acceptance of check in payment — creditor's right to collect balance of debt**

Nothing else appearing, a check given and received by the creditor which purports to be payment in full of an account does not preclude the creditor accepting it from showing that in fact it was not in full unless under the principle of accord and satisfaction there had been an acceptance of the check in settlement of a disputed account.

**12. Accord and Satisfaction § 1— what constitutes an agreement — payment by and acceptance of check**

Where there had been no agreement between the creditor and debtor to pay a sum less than the total amount of the account due, nor had there been an offer to pay the debt by installments, payment by the debtor of thirty-five per cent of the undisputed debt by two separately dated checks bearing on the face of one the words "first instalment of agreed settlement" and on the other "final instalment of agreed settlement," and the negotiation of the checks by the creditor with the indorsement "with reservation of all our rights," do not as a matter of law result in accord and satisfaction of the undisputed account; consequently, the creditor may enforce collection of the unpaid balance of the account. G.S. 1-540.

**13. Accord and Satisfaction § 1— the accord — necessity for consideration**

Consideration must in some form be present in an accord.

**14. Accord and Satisfaction § 1; Compromise and Settlement § 1— applicability of contract law**

Whether denominated accord and satisfaction or compromise and settlement, the executed agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts.

**15. Uniform Commercial Code § 2— construction and interpretation**

The courts are required to liberally construe and apply the provisions of the Uniform Commercial Code to promote its underlying purposes and policies. G.S. 25-1-102.

**16. Uniform Commercial Code § 3— date of application**

The Uniform Commercial Code, which became effective at midnight on 30 June 1967, does not apply to transactions validly entered into before 1 July 1967.

**17. Uniform Commercial Code § 3—   date of application**

Although lumber was sold and delivered prior to 1 July 1967, provisions of the Uniform Commercial Code are applicable to the giving and receiving of checks in payment of the lumber where the transactions relating to the checks occurred after 1 July 1967. G.S. 25-10-101, G.S. 25-10-102, G.S. 25-3-104.

**18. Uniform Commercial Code § 4—   what constitutes acceptance under reservation of rights**

Where debtor pays thirty-five per cent of an account with checks bearing on the face of one the words "first instalment of agreed settlement" and on the other "final instalment of agreed settlement," the creditor reserves its right to collect the remainder of the unpaid account when it indorses the checks "with reservation of all our rights." G.S. 25-1-207.

APPEAL by defendant from *Snepp, J.,* September 1968 Civil Session of the Superior Court of LINCOLN County.

The plaintiff, Baillie Lumber Company, Inc. (Baillie), a lumber distributor in New York, on 6 April 1967 sold and delivered a quantity of lumber to the defendant, Kincaid Carolina Corporation (Kincaid). On 6 April 1967 Baillie sent its statement for the lumber to Kincaid in the amount of $2,447.61. There was no controversy over the quantity, quality, or price of the lumber. Kincaid admits in its answer to Baillie's complaint that the contract price for the lumber was $2,447.61 and that it was payable within thirty days. Kincaid did not pay for the lumber, and on 16 August 1967, through its attorneys, wrote its creditors, enclosed a financial statement, asserted that it could not pay them, and offered them a thirty-five per cent settlement. This letter contained, among other things, the following:

"Provided a sufficient number of creditors accept this proposal within sixty (60) days from the date of this letter, the stockholders will make available to the company sufficient funds to pay to the trade creditors 35% in full settlement of their account. The company also intends to pay in full forty-four creditors whose accounts are less than $200.00 each, and which accounts total $3,145.37. The stockholders feel that this will enable them to liquidate the current assets in an orderly fashion, and to find a buyer for the fixed assets under other than forced sale conditions."

On 25 August 1967 Baillie replied to defendant's letter, as follows:

"Gentlemen:

Re: Account Owing to Baillie
Lumber Co., Inc. in the
Amount of $2,447.61

We have reviewed your letter of August 16, 1967, and the enclosed Statement of Financial Position as of July 31, 1967.

Provided that such letter and such Statement of Financial Position together contain all of the relevent (sic) information which is needed to be furnished to enable us, as a creditor of Kincaid Carolina Corporation, to determine the action to be taken on the proposal therein made to creditors and provided that payment is made to us on or before September 20, 1967, we agree to accept 35% of our account in full settlement."

The record reveals no further communication between the parties until the date of 27 February 1968 when Kincaid forwarded to Baillie its check no. 4985 dated 27 February 1968 in the sum of $428.33 with the following words typed on the face thereof: "First instalment of agreed settlement." Baillie received the money for this check after typing on the back thereof above its indorsement the following words: "With reservation of all our rights."

Thereafter, Kincaid forwarded to Baillie its check no. 5118 dated 12 April 1968 in the sum of $428.33 with the following words typed on the face thereof: "Final instalment of agreed settlement." Baillie received the money for this check after writing on the back thereof above its indorsement the following words: "With reservations of all our rights."

On 2 May 1968 Baillie instituted this action asserting, among other things, that Kincaid had paid $856.66 of the contract purchase price of the lumber, leaving a balance due of $1,590.95. Kincaid in its answer asserted that Baillie had agreed upon a settlement of this account and had accepted payment of a lesser sum in compromise of the whole as a full and complete discharge of the same. As a further answer, Kincaid asserted in its answer that when Baillie received, cashed, retained, and appropriated the proceeds from the two checks that such resulted in an accord and satisfaction and that G.S. 1-540 is a complete defense and bar to any recovery in this case.

When the case came on for trial, the parties submitted to the

court an agreed statement of facts and agreed that the issues submitted by them be answered by the court.

The court made findings of fact, conclusions of law, and entered judgment that Baillie have and recover of Kincaid the sum of $1,-590.05 with interest. Kincaid appealed, assigning error.

*Ervin, Horack & McCartha by C. Eugene McCartha for plaintiff appellee.*

*Keener & Cagle by Joe N. Cagle for defendant appellant.*

MALLARD, C.J.

When the case was called for trial, the parties submitted to the court an agreed statement of facts and issues as follows:

"AGREED STATEMENT OF FACTS AND ISSUES

Plaintiff and Defendant stipulate and agree the facts in this case are as follows:

Plaintiff is a lumber distributor in Hamburg, New York. Defendant is a furniture manufacturer in Lincolnton, North Carolina. Sometime prior to April 6, 1967, defendant placed an order with plaintiff for 8,964 feet of cherry lumber. Plaintiff filled the order and on April 6, 1967, sent its statement to defendant in the amount of $2,447.61 for the lumber. A copy of the statement is attached.

On August 16, 1967, defendant, through its attorneys, wrote its creditors offering a 35% settlement to them. A copy of defendant's letter to plaintiff is attached.

On August 25, 1967, plaintiff replied to defendant's offer. A copy of plaintiff's letter of reply is attached.

There were no further communications between plaintiff and defendant until February 27, 1968.

On February 27, 1968, defendant forwarded its check number 4985 in the amount of $428.33 to plaintiff with the words 'first installment of agreed settlement' on the face of the check, which was endorsed by plaintiff 'with reservation of all our rights.' A copy of the check is attached.

On April 2, 1968, defendant forwarded its check number 5118 in the amount of $428.33 to plaintiff with the words 'final installment of agreed settlement' on the face of the check, which was endorsed by plaintiff 'with reservation of all our rights.' A copy of the check is attached.

On May 2, 1968, plaintiff entered suit against defendant for $1,590.95, which is the difference between the amount of plaintiff's statement of April 6, 1967, and the two checks forwarded to plaintiff by defendant.

Plaintiff and Defendant agree that the issues that arise in this case are as follow:

1.  Was defendant indebted to plaintiff in the amount of $2,-447.61 for the purchase of lumber, as alleged by plaintiff in its Complaint?

    ANSWER: Yes, by agreement of the parties.

2.  Was there an accord and satisfaction between plaintiff and defendant, as alleged by defendant in its Further Answer and Defense?

    ANSWER: .................... (To be answered by the Court)

3.  How much, if any, is plaintiff entitled to recover from defendant?

    ANSWER: ..................... (To be answered by the Court)"

Defendant Kincaid assigns as error a portion of the findings of fact by the trial judge, all of the conclusions of law, and the signing and entering of the judgment.

The judgment, which includes the court's findings of fact, reads as follows:

"This matter coming on to be heard before the undersigned Judge presiding over the September 1968 Mixed Session of the Superior Court for Lincoln County, the parties submitted to the Court an agreed statement of facts, and agreed that the issues submitted by them be answered by the Court. The Court therefore makes findings of fact, and enters its conclusions of law and judgment as follows:

### FINDINGS OF FACT

1.  On May 6, 1967, plaintiff sold and delivered to defendant certain lumber, for which defendant agreed to pay plaintiff $2,447.61.

2.  Under date of August 16, 1967, defendant, as part of a general settlement with its creditors, offered to pay plaintiff 35% of the sum of $2,447.61 due plaintiff, in full satisfaction of the debt.

3. Under date of August 25, 1967, plaintiff agreed to accept said settlement, upon condition that payment of the offered sum be made to it on or before September 20, 1967.

4. Defendant did not pay said sum to plaintiff on or before September 20, 1967.

5. On February 27, 1968, defendant forwarded a check in the amount of four hundred twenty-eight dollars thirty-three cents ($428.33), being one-half ($\frac{1}{2}$) of thirty-five (35%) per cent of plaintiff's claim, to the plaintiff with the words 'First installment of agreed settlement' on the face of the check. Said check was endorsed by plaintiff 'With reservation of all our rights' and was cashed by the plaintiff. On April 2, 1968, defendant forwarded its check #5118 in the amount of four hundred twenty-eight dollars thirty-three cents ($428.33) to the plaintiff with the words 'Final Installment' on the face of the check. Said check was endorsed by the plaintiff 'With reservation of all our rights' and was cashed by the plaintiff.

## CONCLUSIONS OF LAW

1. No accord and satisfaction was had between plaintiff and defendant.

2. Plaintiff, by accepting the checks of defendant dated February 27, 1968, and April 12, 1968, with reservation of rights, reserved its right to collect the balance of the amount claimed to be due it.

3. Defendant is indebted to plaintiff in the sum of $1,590.05 (sic).

## JUDGMENT

It is ordered, adjudged and decreed:

1. That plaintiff have and recover judgment of defendant in the sum of $1,590.05 (sic), with interest thereon from May 6, 1967, until paid.

2. That defendant pay the costs of this action."

The "findings of fact" in paragraph numbered 5 are not identical to the facts contained in the "Agreed Statement of Facts and Issues"; however, they are in substantial accord and Kincaid, having agreed to the facts, will not be heard to controvert them.

However, Kincaid contends that the court erred when it failed to find that the checks were tendered to Baillie in full satisfaction of Baillie's claim. Kincaid specifically requested the court to so

find. Kincaid also contends that the refusal of the court to so find was tantamount to an affirmative finding that it had not made such a request.

**[1-4]** The burden of proving the defense of accord and satisfaction was on Kincaid. The question of accord and satisfaction may be one of fact and of law. *Rosser v. Bynum,* 168 N.C. 340, 84 S.E. 393; *Allgood v. Trust Co.,* 242 N.C. 506, 88 S.E. 2d 825. In this case the trial judge was the judge of both the law and the facts. The court, upon the competent evidence offered, found the facts and then stated as its conclusion of law that there was no accord and satisfaction between the parties. The facts found support the conclusions of law and the judgment. Kincaid's assignment of error to the findings of fact and failure to find other facts is overruled.

G.S. 1-540 reads as follows:

"By agreement receipt of less sum is discharge. — In all claims, or money demands, of whatever kind, and howsoever due, where an agreement is made and accepted for a less amount than that demanded or claimed to be due, in satisfaction thereof, the payment of the less amount according to such agreement in compromise of the whole is a full and complete discharge of the same."

**[5]** By the words of this statute, G.S. 1-540, a compromise and settlement is indicated; and a compromise, as distinguished from accord and satisfaction, must be based on a disputed claim while accord and satisfaction may be based on an undisputed or liquidated claim. *Products Corporation v. Chestnutt,* 252 N.C. 269, 113 S.E. 2d 587.

In 1 Strong, N.C. Index 2d, Accord and Satisfaction, § 1, it is said:

"A compromise and settlement must be based upon a disputed claim; an accord and satisfaction may be based on an undisputed or liquidated claim.

An accord and satisfaction is compounded of two elements: An accord, which is an agreement whereby one of the parties undertakes to give or perform and the other to accept in satisfaction of a claim, liquidated or in dispute, something other than or different from what he is or considers himself entitled to; and a satisfaction, which is the execution or performance of such agreement."

**[6-8]** It should be noted that G.S. 1-540 applies as a compromise and settlement when an agreement is made and accepted. In the

case before us Kincaid in the letter of its attorney made a conditional offer to Baillie. The condition was to pay thirty-five per cent if a sufficient number of creditors accepted the proposal within sixty days from 16 August 1967. In reply thereto on 25 August 1967, Baillie made a conditional acceptance of the offer. The conditions were to accept if Kincaid's letter contained all of the relevant information and if payment was made to Baillie on or before 20 September 1967. Thus, it is seen that Baillie did not accept the offer of Kincaid as made. The counterproposal as made by Baillie was not accepted by Kincaid. It is part of the agreed statement of facts that after 25 August 1967 there was no further communication between the parties until 27 February 1968. Baillie was not paid anything on its account on or before 20 September 1967 in accordance with its proposal. The principles of law applicable here have been stated by Justice Rodman in the case of *Prentzas v. Prentzas,* 260 N.C. 101, 131 S.E. 2d 678, as follows:

> "Defendants' plea of accord and satisfaction 'is recognized as a method of discharging a contract, or settling a cause of action arising either from a contract or a tort, by substituting for such contract or cause of action an agreement for the satisfaction thereof, and an execution of such substitute agreement.' *Walker v. Burt,* 182 N.C. 325, 109 S.E. 43; *Products Corp. v. Chestnutt,* 252 N.C. 269, 113 S.E. 2d 587; *Bizzell v. Bizzell,* 247 N.C. 590, 101 S.E. 2d 668; *Allgood v. Trust Co.,* 242 N.C. 506, 88 S.E. 2d 825, 1 Am. Jur. 2d 301.
>
> The word 'agreement' implies the parties are of one mind — all have a common understanding of the rights and obligations of the others — there has been a meeting of the minds. *Richardson v. Storage Co.,* 223 N.C. 344, 26 S.E. 2d 897; *Sprinkle v. Ponder,* 233 N.C. 312, 64 S.E. 2d 171; *Allgood v. Trust Co., supra; McCraw v. Llewellyn,* 256 N.C. 213, 123 S.E. 2d 575. Agreements are reached by an offer by one party and an acceptance by the other. This is true even though the legal effect of the acceptance may not be understood. *Wright v. McMullan,* 249 N.C. 591, 107 S.E. 2d 98; *McGill v. Freight,* 245 N.C. 469, 96 S.E. 2d 438; *Greene v. Spivey,* 236 N.C. 435, 73 S.E. 2d 488."

The accord is the agreement and the satisfaction is the execution or performance of the agreement. *Bizzell v. Bizzell, supra.*

[9]    There is a well-recognized distinction between liquidated or undisputed claims and unliquidated or disputed ones. Under the common law, an agreement to receive a part of a debt due in lieu of the whole of an undisputed, as distinguished from a disputed debt

due, was held to be a *nudum pactum* as to all in excess of the sum actually paid. *Union Bank v. Board of Commissioners,* 116 N.C. 339, 21 S.E. 410 (1895).

[10]    In the present case the account of Baillie for the lumber sold and delivered by it to Kincaid was both liquidated and undisputed. An account is liquidated when the amount thereof has been fixed by agreement or if it can be exactly determined by the application of rules of arithmetic or of law. Black's Law Dictionary, 4th Ed.

[11]    It is the law in North Carolina, nothing else appearing, that a check given and received by the creditor, which purports to be payment in full of an account, does not preclude the creditor accepting it from showing that in fact it was not in full unless under the principle of accord and satisfaction there had been an acceptance of the check in settlement of a disputed account. *Koonce v. Motor Lines, Inc.,* 249 N. C. 390, 106 S.E. 2d 576; *Allgood v. Trust Co., supra; Rosser v. Bynum, supra.*

[12]    The original proposal of Kincaid did not contain any reference to payments of the proposed thirty-five per cent by installments; therefore, when Baillie received the check dated 27 February 1968, there had been no offer theretofore made to pay anything by installments and certainly no agreement to pay a sum less than the total amount due had been theretofore made and accepted with respect to the account Kincaid owed Baillie. There had been an offer made by each party but no acceptance by the other of the offer as made. Therefore, unless the words printed on the face of the first check, "First instalment of agreed settlement" or the words on the second check, "Final instalment of agreed settlement," constitute a new offer and unless the indorsement constitutes an acceptance thereof, the provisions of G.S. 1-540 do not apply.

We do not think that the words appearing on the face of the first check constituted any specific offer of settlement. It was vague in that it stated it was the first installment of an agreed settlement. Baillie, upon receipt of it, could not know how many more installments were to follow because there had been no agreed settlement. Under the circumstances, Baillie was entitled to treat the transaction as merely the act of an honest debtor remitting less than was due. Baillie, by its indorsement of the first check, "With reservation of all our rights," put Kincaid on notice that it was not accepting such check as an agreed settlement.

The second check is dated 12 April 1968 which is over forty days after the date of the first one. Even if this second check was mailed

on 2 April 1968, as indicated in the agreed statement of facts, the indorsement by a collecting bank, as shown on the back thereof, indicates that it was being negotiated on 18 April 1968. From this, it is manifest that the drawee bank could not have paid this check until after that date. Kincaid had ample notice from Baillie's indorsement over its signature that the first check had not been accepted as an installment on a settlement for less than the full amount due.

In 1 Am. Jur. 2d, Accord and Satisfaction, § 18, p. 317, there appears the following:

> "The fact that a remittance by check purporting to be 'in full' is accepted and used does not result in an accord and satisfaction if the claim involved is liquidated and undisputed, under the generally accepted rule that an accord and satisfaction does not result from the part payment of a liquidated and undisputed claim. The creditor is justified in treating the transaction as merely the act of an honest debtor remitting less than is due under a mistake as to the nature of the contract."

We do not think that in this case the memorandum placed on the face of the checks by Kincaid and the memorandum placed on the back of the checks by Baillie, in view of the circumstances and of the dates of the two transactions, constitute an offer and acceptance so as to bring this transaction as a matter of law within the provisions of G.S. 1-540.

**[13]** The checks involved herein were in payment of part of a liquidated and undisputed debt which was already due. Kincaid has paid but a part of its indebtedness and suffers no detriment. By these partial payments, Baillie has received no more than it was entitled to receive for its lumber sold and delivered to Kincaid. No consideration exists for the discharge of the balance due Baillie for its lumber. Consideration must in some form or other be present in an accord. *Bizzell v. Bizzell, supra; State of Del. v. Mass. Bonding & Ins. Co.,* 40 Del. 274, 9 A. 2d 77 (1939).

**[14]** In *Casualty Co. v. Teer Co.,* 250 N.C. 547, 109 S.E. 2d 171, it is said:

> "Whether denominated accord and satisfaction or compromise and settlement, the executed agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts. *Dobias v. White,* 239 N.C. 409, 80 S.E. 2d 23."

Baillie contends that the provisions of G.S. 25-1-207 are applic-

able. This section of the statute is a part of the Uniform Commercial Code and reads:

"Performance or acceptance under reservation of rights. — A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice,' 'under protest' or the like are sufficient."

[15] This section of the statute comes under Article 1 which is that portion of the Uniform Commercial Code setting forth "General definitions and Interpretation." We are required to liberally construe and apply the provisions of the Uniform Commercial Code to promote its underlying purposes and policies. G.S. 25-1-102.

[16, 17] The Uniform Commercial Code became effective at midnight on 30 June 1967. G.S. 25-10-101. Section 25-10-102 provides that the Code shall not apply to transactions validly entered into before 1 July 1967. The lumber was sold and delivered prior to 1 July 1967; however, all the transactions with respect to the checks as set forth above occurred after 1 July 1967, the date the Code became effective. We think that the provisions of the Uniform Commercial Code are applicable to the giving and receiving of the checks in this case. G.S. 25-3-104.

[18] Applying the provisions of G.S. 25-1-207 to the facts of this case, it is clear that Baillie by indorsing the checks, "With reservation of all our rights," complied with that portion of the statute requiring an explicit reservation of rights. Apparently, Kincaid was claiming a right to settle under its rejected offer of payment of thirty-five per cent of Baillie's claim. Baillie contended that such was unwarranted and that it was entitled to payment of its account. We hold that Baillie, by its indorsement with explicit reservations, did not accept the second check in full payment but in the manner provided in G.S. 25-1-207 reserved its right to collect the remainder of its unpaid bill.

[12] We also hold that the checks sent by Kincaid and accepted by Baillie, under the circumstances presented by this record, do not as a matter of law result in an accord and satisfaction of the undisputed and liquidated account owed Baillie by Kincaid, and the trial court found and concluded that they did not. It follows, therefore, that Baillie had the right to enforce collection of the unpaid balance of its original claim.

For the reasons stated above, we think all of Kincaid's assign-

ments of error should be and they are, therefore, overruled. The judgment of the Superior Court is affirmed.

Affirmed.

BRITT and PARKER, JJ., concur.