**Bolus v. United Penn Bank**

*Michael H. Roth,* for plaintiff.
*Arthur L. Piccone,* for defendant.

COTTONE, *J.,* May 21, 1982—This matter is before the court on a complaint in equity filed by plaintiff, Robert Bolus, against defendant, United Penn Bank. In this proceeding, plaintiff requests this court to find that a loan installment contract entered into by the parties has been fully satisfied by plaintiff and direct the defendant to properly endorse the title to a vehicle which had served as collateral for the loan and to transfer the title free and clear of any liens or encumbrances to him.

## FACTS

On March 13, 1980, plaintiff and defendant entered into a contract whereby plaintiff borrowed monies from defendant which plaintiff used to purchase a 1980 Oldsmobile Delta 88 Royale. A lien was duly noted on the certificate of title of said automobile in favor of United Penn Bank.

Under the terms of the loan installment contract dated March 13, 1980[1], plaintiff is obligated to repay to defendant the sum of $11,555.52. Said repayment is to be made by 48 successive monthly installments of $240.74, with the first installment due and payable on April 13, 1980.

---

1. The alleged loan installment contract was entered into evidence and marked as plaintiff's and defendant's joint Exhibit Number One.

Plaintiff, as of the date of trial, April 8, 1982, made only four monthly payments. The last two payments were made by a cashier's check dated July 17, 1980. This cashier's check also contained an endorsement on the reverse side that the check, which was in the amount of $481.48 would, upon acceptance, satisfy the debt owed to defendant. The debt had a remaining balance of $10,592.56 which, in fact, was evidenced by a bank record introduced at trial[2] and which, in effect, was basically admitted within the endorsement itself. The aforesaid cashier's check was subsequently endorsed and cashed by defendant without any indication of protest.

## DISCUSSION AND CONCLUSION

At trial, plaintiff testified that, several years prior to entering into the said installment loan contract, plaintiff individually and through his business corporations, had an extensive and ongoing financial relationship with defendant whereby defendant loaned substantial amounts of money to plaintiff and his business enterprises. Subsequent to the business loan to plaintiff from defendant, numerous disputes arose between plaintiff and defendant regarding virtually all the financial transactions between them. Litigation ensued and other disputes were ongoing between the parties as of July 15, 1980.

Plaintiff offered testimony that his attorney, as of that time, had advised the defendant that, unless the financial disputes between the parties were re-

---

2. The bank record evidencing the amount owed on said account was admitted into evidence as defendant's Exhibit Number Two.

solved, the plaintiff would institute further litigation. Consequently, in an effort to avoid further lawsuits and amicably resolve the substantial disputes between the parties, it was alleged by plaintiff that officers of the defendant-bank, on July 17, 1980, offered to cancel plaintiff's automobile loan obligation upon receipt of two additional payments in the form of a cashier's check to be made that day. This offer was allegedly made by bank officers located in the defendant's Wilkes-Barre office. Plaintiff testified that this offer was accepted by him and a cashier's check was delivered to defendant's Scranton office to a bank-window teller that same day for two additional monthly payments in the amount of $481.48. The payments were made to the teller as payments are usually made. The loan coupon book was given to the teller and two payment coupons were then removed. Nothing was said to the teller that this check was payment in full of the entire debt, although the check contained the aforesaid endorsement and the teller accepted it without any question. In view of defendant's endorsement and acceptance of said check, plaintiff argues said acceptance constituted an accord and satisfaction of the entire debt owed to defendant.

Defendant, on the other hand, through its witnesses, testified that, although it acknowledges other financial dealings and transactions with plaintiff in a commercial setting, no offer to cancel the personal car loan debt was ever made by defendant through its employees and/or agents to plaintiff and that defendant, through its employees and/or agents, has always demanded that plaintiff pay completely and fully the debt owed to defendant. In fact, at one point in time, the vehicle was repossessed by defendant. Subsequently, by means unknown to defendant, plaintiff regained possession of

said vehicle and, as of this date, he still retains possession of the said automobile.

Defendant argues that, since the debt at issue was never in dispute as to the specific amount owed and due defendant, its acceptance of the cashier's check dated July 17, 1980, did not constitute an accord or satisfaction on the entire debt owed to it and, therefore, it is not precluded from collecting the remaining balance due on said contract.

Thus, it is encumbent upon this court to determine whether or not the defendant's endorsement and acceptance of the said cashier's check dated July 17, 1980, containing said endorsement, constituted a valid accord and satisfaction of the entire debt owed to defendant. We find that it did not.

The principles governing the common law rule of accord and satisfaction are well-settled. The same elements are necessary to show the existence of an "accord and satisfaction" as to show the existence of a contract. There must be a "meeting of the minds" as well as consideration. Brunswick Corp. v. Levin, 442 Pa. 488, 276 A.2d 532 (1971); Barry v. Caplin, 73 Pa. Super. 487 _____ Atl. _____ (1920). This consideration is usually found in the fact that, at the outset, there is a dispute as to the actual amount due, and the agreement of both parties upon an amount arrived at by compromise forms the consideration for the settlement. Hayden v. Coddington, 169 Pa. 174, 82 A.2d 285 (1951). As our Supreme Court explained in Law v. Mackie, 373 Pa. 212, 221, 95 A.2d 656, 660 (1953), citing Lucacher v. Kerson, 355 Pa. 79, 48 A.2d 857 (1946), and later on reiterated in Brunswick Corp. v. Levin, supra at 491, 276 A.2d at 534:

"Where there is a dispute or disagreement between the debtor and creditor as to their respective

rights, a payment tendered in full satisfaction of the other's claim operates as an accord and satisfaction if the payment is accepted and retained. On the other hand, in the absence of such a controversy, the payment of a part of the amount due under a contract, even though accepted by the creditor as in full satisfaction of the debt, does not work a discharge of the entire indebtedness, for the reason that there is no consideration for the creditor's agreement that it should so operate."

Accordingly, a dispute as to the terms of a contract, or as to the meaning to be given them, may provide the proper basis for an accord and satisfaction. See Hayden v. Coddington, supra. When, however, the amount owing on a contract is not in dispute, but is a liquidated, fixed amount, acceptance of a check in a lesser amount drawn in full settlement of the debt does not discharge the entire debt. A debtor cannot create a dispute by a mere refusal to pay a claim undisputed in part. Hagerty Oil Co. v. Chester County Security Fund, Inc., 248 Pa. Super. 456, 375 A.2d 186 (1977). The burden of establishing the common law rule of accord and satisfaction is placed on the party relying on it. Brunswick Corp. v. Levin, supra; Hayden v. Coddington, supra.

It is quite clear to this court that there is no dispute between the parties as to the amount due and owed on the aforesaid installment loan contract prior to plaintiff's issuance of said cashier's check dated July 17, 1980. Therefore, consideration obviously is not found in any dispute arising out of the specific loan installment contract. However, from a careful reading of law concerning the common law rule of accord and satisfaction, we are convinced that a dispute as to the terms of the specific contract in question is not necessary so long as consideration can be shown independently from any dispute.

"Generally, a legally sufficient consideration must exist. Cases stating that a bona fide dispute must exist should probably be considered in the light of the requirement of consideration, in that, if there is no other consideration, a bona fide dispute must exist." PLE. Accord and Compromises Section 5 and cases cited therein.

In the pleadings, plaintiff avers that many disputes arose between the plaintiff and defendant regarding other financial dealings. He avers that, in order to avoid further litigation and amicably resolve the substantial financial disputes between the parties, defendant, through its agents and employees, offered to cancel plaintiff's automobile loan obligation. Certainly, if plaintiff could have established at trial that he did refrain from further litigation regarding these other financial transactions, and did, in fact, resolve the outstanding financial disputes between the parties, we may have, indeed, found there to be sufficient consideration. However, testimony elicited from the several witnesses at trial is barren of any such evidence. Therefore, plaintiff has failed to meet his burden of proof. He has not shown either the existence of a bona fide dispute as to the terms of the aforesaid loan installment contract nor the existence of consideration independent from any dispute. Accordingly, we find that defendant's acceptance of plaintiff's cashier's check dated July 17, 1980, did not constitute an accord and satisfaction on the debt owed to defendant pursuant to the aforesaid loan installment contract entered into by the parties.

Plaintiff also argues that, besides the common law rule of accord and satisfaction. Section 3605(a)(1) and 1207 of the Uniform Commercial Code (Code) (13 Pa. C.S.A. §§3605, 1207) also ap-

ply to this transaction and operates to independently discharge said debt.

Section 3605(a)(1) provides as follows:

"Section 3605 Cancellation and Renunciation

(a) General rule — The holder of an instrument may even without consideration discharge any party:

(1) in any manner apparent on the face of the instrument or endorsement, as by intentionally cancelling the instrument or signature of the party by destruction or mutilation, or by striking out the signature of the party; or. . . ."

Plaintiff concludes that the above-quoted section of the code operates to cancel all of plaintiff's obligations under the personal automobile loan note dated March 13, 1980.

In order to cancel an "instrument," alteration of that instrument must be made, i.e., "cancelling the instrument or signature of the party by destruction or mutilation, or by striking out the signature of the party."

Plaintiff, in this instance, argues that such alteration was apparent on said cashier's check dated July 17, 1980, and such acceptance and endorsement of said check by the bank constituted an effective cancellation of all obligations due and owed on said personal automobile loan note dated March 13, 1980. We do not agree. The instrument which evidences plaintiff's obligation to the defendant-bank is not the subject cashier's check, but, rather, the personal automobile loan note dated March 13, 1980. Consequently, in order to have an effective cancellation of all obligations due and owed under this note pursuant to section 3605(a)(1) of the code, there must be some evidence of some alteration of

the personal automobile loan note dated March 13, 1980. The evidence indicates that there has been no such mutilation or destruction of said note, nor has plaintiff's signature been stricken out. There is nothing "apparent on the face of the instrument" which would result in effectively cancelling plaintiff's obligation pursuant to section 3605(a)(1). At best, all that can be found is an alleged oral cancellation by one of the bank's officers, which is clearly not sufficient to constitute an effective cancellation pursuant to section 3605(a)(1) of the Code.

Plaintiff also cites section 1207 of the Code, 13 Pa. C.S.A. § 1207. Said section provides as follows:

"Section 1207. Performance or Acceptance Under Reservation of Rights:

"A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice, under protest' or the like are sufficient."

Plaintiff, in this instance, argues that section 1207 applies to said transaction and operates to independently discharge said debt. In particular, he argues that section 1207 makes it clear that, if the defendant-bank accepted plaintiff's check "under protest," a discharge of defendant's debt may not have occurred. However, since the defendant failed to make any protest or reservation of rights, it is bound by the terms of said endorsement as is written on the back of the check.

The official comment to section 1207 reveals that said section "merely provides a specific measure on which a party can rely." It "is not addressed to the creation or loss of remedies."

Our research indicates no cases in Pennsylvania interpreting this section of the Code. The policy of the Pennsylvania legislatures in adopting the Code, however, is that the courts of the Commonwealth are to make uniform the law among the various jurisdictions. 13 Pa. C.S.A. §1102(b)(3).

Through our research of other jurisdictions, we have found several reported decisions interpreting § 1-207 of the Code and discussing its effects on full payment check cases such as we have in the instant matter. In these cases, however, the courts were concerned with the sole issue of what effect § 1-207 of the Code had on the common law rule of accord and satisfaction. These courts were not in agreement with its effect.[3]

Nevertheless, those jurisdictions which applied section 1-207 of the Code, applied said section only when the creditor relied on it as a defense to a valid accord and satisfaction. From all of the above-cited

---

3. Chancellor, Inc. v. Hamilton Appliance Company, Inc. 175 N.J. Super. 345, 418 A.2d 1326 (1980) (held Code not to be applicable); Brown v. Coastal Truckways, Inc., 44 N.C. App. 454, 261 S.E. 2d 266 (Ct. App. 1980) (held Code not to be applicable); Jahn v. Burns, 593 P.2d 828 (Wyo. Sup. Ct. 1979) (held Code not to be applicable); Lange-Finn Constr. Co. Inc. v. Albany Steel & Iron Supply Co., 94 Misc. 2d 15, 403 N.Y.S. 2d 1012 (Sup. Ct. 1978) (held Code to be applicable for the benefit of the creditor); Ayer v. Sky Club, Inc., 70 App. Div. 2d 863, 418 N.Y.S. 2d 57 (App. Div. 1979) (held Code to be applicable for the benefit of the creditor); Baillie Lumber Co. v. Kincaid Carolina Corp., 4 N.C. App. 342, 167 S.E. 2d 85 (Ct. App. 1969) (indicated Code to be applicable for the benefit of the creditor); Miller v. Jung, 361 So. 2d 788 (Fla. Ct. App. 1978) (indicated Code to be applicable for the benefit of the creditor); Bivins v. White Dairy, 378 So. 2d 1122 (Ala. Civ. App. 1979) (indicated Code to be applicable for the benefit of the creditor); Scholl v. Tallman, 247 N.W. 2d 490 (S.C. Sup. Ct. 1976) (indicated Code to be applicable for the benefit of the creditor).

cases, it is clear that section 1-207 independently cannot bind a creditor upon acceptance of a full payment check. There must be a common law accord and satisfaction. For these reasons, we find plaintiff's argument as to the independent applicability of section 1-207 of the Code to be without merit.

Accordingly, plaintiff's said loan obligation at defendant-bank has not been fulfilled. An appropriate order shall be entered.

### DECREE NISI

And now, this May 21, 1982, it is hereby adjudged, ordered and decreed that

Defendant's endorsement on and acceptance of plaintiff's cashier's check dated July 17, 1980, did not constitute an accord and satisfaction on the remaining balance of the debt owed by plaintiff. Thus, the relief requested by plaintiff in his complaint in equity is denied.

The clerk of judicial records is to give prompt notice of the filing of this decree which shall become final unless exceptions thereto are filed within ten days from the filing hereof.