HUDSON, Judge.
This is the second appeal of this case, which involves disputes between these parties over whether defendants owed money to plaintiff, and over the parties' attempts to settle the dispute. As explained below, we affirm the judgment and orders of the superior court.
In 2000, defendants sought a loan from Centura Bank ("the bank"), which the bank declined based on defendants' inability to comply with loan documentation package requirements. The bank then referred defendants to plaintiff, who had expertise in evaluatingchurch financing requests, and with whom the bank had a joint venturing and partnership agreement as part of its duties under the Community Reinvestment Act. After defendants obtained the financing they sought, a dispute arose between the parties over whether plaintiff had provided services to defendants, and whether defendants owed him money.
On 21 December 2000, plaintiff Robert A. Zander sued defendants Greater Emmanuel Pentacostal Temple of Durham and its affiliates (collectively "Greater Emmanuel") for breach of contract. Following a series of motions filed by both parties, they entered a settlement agreement in which plaintiff agreed to accept $7,500 in exchange for releasing all claims against defendants. On 14 September 2001, defendants tendered $6,500 toward the settlement, which plaintiff accepted.
Thereafter, defendants tendered the balance to plaintiff, who refused to accept the tender. Plaintiff then notified defendants that he would hold onto the initial payment while he pursued his lawsuit. Defendants moved to dismiss the action on the grounds that the matter had been settled and the plaintiff had unreasonably refused to accept the balance tendered. The court granted the motion 5 December 2001, and plaintiff appealed to this Court. We held that all conditions of the settlement agreement had not been met and remanded the matter for a further hearing. Zander v. Greater Emmanuel Pentacostal, 154 N.C. App. 206, 571 S.E.2d 699 (2002) (hereinafter "Zander I"). On remand, defendants moved to have the settlement funds returned since this Court had held thatthere was, in essence, no settlement. On or about 12 June 2003, Judge Stanback entered an order granting the motion for reimbursement and ordering that payment of $6,500 be made by 17 June 2003. Thereafter, plaintiff moved for reconsideration, and defendants then moved for summary judgment on their counterclaims, which the court granted in an order and judgment filed 13 August 2003. In that judgment, the court entered judgment 1) against plaintiff on defendants' counterclaims in the amount of $3,500, trebled to total $10,500, and 2) against plaintiff for the separate sum of $6,500 as previously ordered with interest and costs. Plaintiff appeals. For the reasons discussed below, we affirm.
Plaintiff first argues that the court erred in ordering him to return funds that defendants had paid plaintiff pursuant to the settlement agreement. We disagree.
"Unjust enrichment has been described as: the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." Watson Elec. Constr. Co. v. Summit Cos., LLC, 160 N.C. App. 647, 652, 587 S.E.2d 87, 92 (2003) (internal quotation marks and citations omitted). "It is a general principle underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself [or herself] at the expense of another." Id.
Under terms of the earlier purported settlement agreement, defendants paid $6,500 to plaintiff in exchange for plaintiff dropping his lawsuit against defendants. In Zander I, this Courtheld that because the terms of the settlement agreement between the parties were not fulfilled, there was no settlement and, therefore, plaintiff could pursue his lawsuit against defendants. Because defendants had tendered $6,500 to plaintiff only under terms of the settlement agreement, plaintiff would be unjustly enriched if he were allowed to retain both the settlement funds and his right to pursue his lawsuit.
The cases cited by plaintiff in his brief are inapposite. Baillie Lumber Co. v. Kincaid Carolina Corp. addresses the doctrine of accord and satisfaction, which is not the issue here, where defendants paid funds to plaintiff under terms of a settlement agreement, not in order to satisfy a disputed debt. 4 N.C. App. 342, 167 S.E.2d 85 (1969). Plaintiff also cites Guerry v. American Trust Co. for the proposition that "the voluntary payment of money by a person who has full knowledge of all the facts cannot be recovered." 234 N.C. 644, 647, 68 S.E.2d 272, 274 (1951). Here, defendants paid plaintiff $6,500 under a settlement agreement, the terms of which were not fulfilled. There are no "facts" appearing in this record which would justify plaintiff retaining that money after the settlement agreement fell apart.
Plaintiff next argues that the court erred in granting summary judgment to defendants and awarding defendants treble damages under N.C. Gen. Stat. § 66-106 (2002), which governs loan brokers, as he contends the statute does not apply. For the reasons discussed below, we disagree. This Court's standard of review of the grant of a motion for summary judgment is whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. Draughon v. Harnett Cty. Bd. of Educ., 158 N.C. App. 705, 707-08, 582 S.E.2d 343, 345 (2003), aff'd, 358 N.C. 137, 591 S.E.2d 520 (2004), reh'g denied, 358 N.C. 381, 597 S.E.2d 129 (2004). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.
N.C. Gen. Stat. § 1A-1, Rule 56(c) (2002).
N.C. Gen. Stat. § 66-106 (1) defines a loan broker as
any person, firm, or corporation who, in return for any consideration from any person, promises to (i) procure for such person, or assist such person in procuring, a loan from any third party; or (ii) consider whether or not it will make a loan to such person.
Under terms of N.C. Gen. Stat. § 66-109(a)
Prior to placing any advertisement or making any other representations to prospective borrowers in this State, every loan broker shall file with the Secretary of State two copies of the disclosure statement required by G.S. 66-107, and either a copy of the bond required by G.S. 66-108, or a copy of the formal notification by the depository that the trust account required by G.S. 66-108 is established. These filings shall be updated as any material changes in the required information or the status of the bond or trust account occur, but no less than annually.
N.C. Gen. Stat. § 66-109 (2002). In addition, under N.C. Gen. Stat. § 66-107, a loan broker must make a specific and detaileddisclosure statement to any person he or she plans to contract with, at least seven days prior to entering any contract.
The pleadings, affidavits, arguments and other matters of record before the court tended to show that defendants signed a project finance agreement presented by plaintiff and paid plaintiff $3,500 for helping defendants to procure a bank loan. Further, the evidence tended to show that before presenting defendants with the project finance agreement, plaintiff gave no disclosure statement to defendants, and had not made the required filings with the Secretary of State. Failure to comply with these statutory requirements may void the contract and constitutes an unfair trade practice per se. N.C. Gen. Stat. § 66-111 (2002). Because there were no genuine issues of material fact regarding defendants' counterclaims under N.C. Gen. Stat. § 66-106, et seq., summary judgment in favor of defendants for those claims was proper.
Affirmed.
Chief Judge MARTIN and Judge TIMMONS-GOODSON concur.
Report per 30(e).