## CANTWELL v. BOYKIN.

(October 16, 1900.)

*Gaming—Futures—Sufficiency of Evidence.*

> Evidence in this case held sufficient to go to jury on question whether a contract was within Acts 1899, chap. 221, prohibiting dealing in "futures."

CIVIL ACTION by W. L. Cantwell against W. J. Boykin, heard by Judge *J. W. Bowman,* at February Term, 1900, of WILSON Superior Court. From a judgment for defendant, the plaintiff appealed.

A jury was empannelled and the following issue was submitted:

Is the defendant indebted to the plaintiff, and if so, in what amount?

The only witness examined was W. L. Cantwell, the plaintiff, who testified as follows:

In the year 1896, I do not remember the exact date, I paid for Mr. Boykin, at his request, to Silsby & Co., Stock Brokers of Washington, D. C., $91.66. At the time his request was made, Boykin promised to reimburse me, but no payment has been made.

The said sum paid at his request was the sum for which I obtained the judgment in this action before the Justice of the Peace.

*Cross-examination.* I rendered Boykin a statement of this account. I don't remember the month the account was given Boykin; it was sometime prior to the first of May, 1896. He went to Virginia in May. I have a copy of the account. I lived in Wilson in 1896; I was acting as commission broker for Silsby & Co. Their head-office was in Washington, D. C. I represented them here, as correspondent, or agent to a lim-

ited extent—not to solicit, but to accept and forward orders. Had an office, but no private wire—the telegraph office was near by.   I sent orders to Silsby for Boykin, Cozart & Washington for ribs—one lot of meat—one contract—don't remember the amount in pounds of the contract.   I had no meat here.   Boykin dealt in leaf tobacco, so did Cozart & Washington; they did not handle meat.   It was what is termed a speculative contract; order was for the purchase of a rib contract for some future month. The margin was not paid by the customer until he was notified that his order had been executed. When the market went down on a purchase, until the margin was exhausted, Silsby had a right to close the contract, unless the customer gave notice that he wished to hold longer, and this would end the trade.   Boykin, Cozart & Washington had a right to close at any time and take the profits—either party had the right to demand actual delivery.   Can't give date of contract now; it was prior to May, 1896; statement of account was rendered to Boykin. I have a copy of the account in book in my office; did not consider it necessary to bring it here. Margin was put up on this contract.   When margin was exhausted I notified them. Cozart & Washington paid their part and Boykin requested me to pay the amount due by him and that he would re-imburse me.   I waited until October, 1898, to bring suit because I had the repeated promises of one I thought to be a gentleman that he would pay me, and on that account waited until the right to bring action was about to be barred by the statute of limitations.   The reason why I did not take an appeal in a similar suit tried at the last Court was because the jury, under a charge from the Court, found an issue of fact against me.   I was indicted and convicted for conducting this business.   I got a commission on each order sent in.

*Re-direct examination.*—I had no interest in the business

127——5

beyond the commission which was paid me when the order was sent in. I got a commission on a contract of cotton of $5, the same on ribs, in the sense that a fire insurance agent gets 15 per cent of the first premium paid to the company. Silsby was a commission merchant, and acted as Boykin's agent in making his purchase. Boykin could have demanded the delivery of the ribs at the time specified in the contract. I had form furnished by Silsby for customers to write their orders upon, and the fact that actual delivery might be demanded was printed on each of them. F. A. Woodard and John F. Bruton were the attorneys who assisted the State in the prosecution referred to above. The indictment was pending two years. I insisted at each term of the Court for a trial, and failing to get a trial, I finally proposed to the Solicitor that if he would nol pros. the indictment I would pay the costs. This he promised to do. He did not quash the bill, however, but had the entry made that I had pleaded guilty. This was the conviction referred to in the cross-examination. Since that time and to the present day the same business has been and is conducted here by others.

*Re-cross examination.*—Forms were not always used. I don't know, but presume that the forms were intended to avoid the statute. No one ever demanded specific delivery, but all customers had a right to demand the delivery of articles bought by them, at all times.

On the completion of Cantwell's evidence the plaintiff rested.

The defendant then moved to nonsuit.

The plaintiff objected.

Objection overruled and the plaintiff excepts and appeals.

The plaintiff assigns as error:

1. The refusal of his Honor to allow the issue to be answered by the jury, and in rendering a judgment of nonsuit.

*Deans & Cantwell* and *Jas. H. Pou,* for plaintiff.
*Fred A. Woodard,* for defendant.

FAIRCLOTH, C. J.   This is an action to recover money alleged to have been paid by plaintiff for and at the request of the defendant.   The defendant alleges that he does not owe the plaintiff anything, and that the contract was illegal and void.   At the trial the plaintiff testified that he was acting as commission broker for Silsby & Co., and that he sent an order for the defendant for produce, of some future month, etc.   At the close of the plaintiff's evidence, his Honor held that he could not recover.   The plaintiff assigns as error the refusal of the Court to allow the issue to be answered by the jury.   The defendant relied upon acts 1889, c. 221, forbidding vicious contracts.   The sole question is, was there sufficient evidence to submit the issue to the jury?   After reading the evidence, we think there was, and that the refusal of the Court to do so was error.   For instance, the plaintiff testified that "it was what is termed a 'speculative contract.' " Did that mean legal speculation, or speculation forbidden by Acts 1899, c. 221?   Again, "either party has a right to demand actual delivery.   *   *   *   I don't know, but presume that the forms were intended to avoid the statute.   No one ever demanded specific delivery, but all customers had a right to demand the delivery of articles bought by them, at all times."   What does this evidence mean with reference to a contract for future delivery?   The error of the Court renders another trial proper.

*Venire de novo.*