ALLEN K. SMITH v. ISABELLA R. FULLER ET AL.

(Filed 25 February, 1910.)

1. **Mortgagor and Mortgagee—Satisfaction, Entry of—Discharge.**

The entry of satisfaction of a mortgage on the books in the office of the register of deeds by the proper person is conclusive of the fact of its discharge and satisfaction as to third parties.

2. **Same—Purchaser—Notice Implied.**

When executors sell certain lands to make assets to pay debts, the lands are bid in by the widow at a fair price, and one of the executors charges himself therewith in his account, makes deed to the widow and takes a mortgage back for the purchase price, and after the lapse of years buys the lands from the widow at a fair price and at the time cancels the mortgage, the widow and her son remaining in possession as tenants and paying rent therefor, his vendee is not, by the former relationship of mortgagor and mortgagee and the recorded but canceled mortgage deed, impressed with notice of any equities *dehors* the deeds existing between him and the widow.

3. **Mortgagor and Mortgagee—Deraigning Title—Mortgage Deed—Equities—Notice.**

When, in deraigning title, one deed refers to another, the purchaser is constructively bound by all that the deed referred to would have disclosed, and he buys subject to any infirmity there apparent. So, likewise, where an infirmity appears in a deed constituting a necessary link in his chain of title.

4. **Mortgagor and Mortgagee—Interpretation of Deeds—"Habendum"—Reference to Deeds—Equities—Implied Notice.**

F. mortgaged certain lands to W., and thereafter W. bought the land from F. by deed at a fair price and canceled the mortgage of record. Thereafter W. sold to S. While some of the words in the granting clause of the deed of W. to S. seemed to be those of a quitclaim deed, the *habendum* and *tenendum* clause were in the usual words of bargain and sale, and the warranty clause referred to the deed of F. to W., which was absolute and unconditional in form. The word "quitclaim" was not used: *Held*, (1) the *habendum* and *tenendum* clause was used to enlarge the estate granted; (2) the language used did not put S. upon implied notice of any equities existing between F. and W. by reason of the mortgage from the one to the other, there being no reference to the mortgage deed.

SMITH *v.* FULLER.

APPEAL from *Lyon, J.,* March Term, 1909, of JOHNSTON.

By order of reference theretofore made, the action had been referred to F. A. Daniels, Esq., to report his conclusions of fact and law to the court. The referee, after notice, took evidence and reported the same with his findings of fact and conclusions of law, to which, being adverse to the plaintiff, he excepted.

The defendants contended that the ancestor of plaintiff purchased with notice of the equity of the defendant Isabella R. Fuller; that the registration books showed the relation of mortgagor and mortgagee between the said Isabella R. Fuller and T. H. Whitley, the vendor of the plaintiff's ancestor, and that in equity plaintiff was bound by such relationship and was subject as his vendor to be held to an accounting for rents and profits received by his vendor.

The defendants further contended that the deed from T. H. Whitley to plaintiff's ancestor was itself notice of their equity against plaintiff's vendor.

It was admitted that Joseph Fuller died seized and possessed of the tract of land in controversy; that he left a will which was duly probated, in which he directed that his debts be paid and the remainder of his estate be divided equally between his wife, Isabella R. Fuller, and his children, six in number, charging the share of one with a named advancement, and the share of one with a certain sum in excess of the others. He appointed his son, Frank G. Fuller, and his son-in-law, T. H. Whitley, executors and directed that all his property, real and personal, be sold at public sale by his executors.

The testator was largely indebted at his death, and his widow dissented from his will. The administration proceeded, and no dower in his real estate being allotted to the widow in the tract of land which is the subject of this action, the executors advertised the land for sale pursuant to the powers in the will, the sale being regularly advertised to take place at the courthouse door in Smithfield, when and where, by arrangement, the widow became the last and highest bidder for the sum of $1,500—a reasonably fair price for the land, and a sum a little more than sufficient to pay the debts of the testator, except the amount due T. H. Whitley and the sum of $300 due upon a judgment of doubtful validity.

The deed was made to Mrs. Fuller, and she, not having the money to pay for the land, T. H. Whitley, her son-in-law and one of the executors, loaned her the money and charged himself as executor with it in his account filed with the clerk. The deed to Mrs. Fuller was dated 7 January, 1895, the day of sale, and was recorded 11 March, 1896. Mrs. Fuller executed on the same date, 7 January, 1895, a mortgage on the land to T. H.

Whitley for $1,800—$1,500 the purchase price and $300 the amount of the doubtful judgment, which deed was recorded 11 March, 1896, and the defendant F. G. Fuller, son of Mrs. Fuller and coexecutor, was the witness to the mortgage deed and proved the same.

At this time the said Whitley seems to have been a man of some means and credit, and was looked upon by Mrs. Fuller as a trusted adviser and her principal reliance for support.

As the sale at which Mrs. Fuller purchased was a public sale, duly advertised, we must assume the price she bid was a fair price for the land, and it was so according to the evidence reported by the referee, though there is no finding by him on this matter and no question of its inadequacy raised by the defendants.

Subsequently, more than four years thereafter, on 12 April, 1899, Isabella R. Fuller executed a deed in fee simple to T. H. Whitley, which deed recited a consideration of $2,000, and was duly recorded on 20 April, 1899, the subscribing witness to this deed and by whom it was proved being F. G. Fuller, the son of the grantor.

On 28 December, 1903, nearly five years thereafter, T. H. Whitley and wife conveyed the land to Allen K. Smith, plaintiff's ancestor, for the recited consideration of $2,500, which deed was recorded on 29 December, 1903, the said deed being as follows (omitting parts not material to this action): "That said T. H. Whitley and wife, Ida B. Whitley, in consideration of $2,500 to them paid by Allen K. Smith, the receipt of which is hereby acknowledged, hath bargained and sold and by these presents do bargain, sell and convey to said Allen K. Smith and his heirs and assigns all of their right, title and interest in and to a certain tract (describing same by metes and bounds), to have and to hold the aforesaid tract or parcel of land and all privileges and appurtenances thereto belonging, to the said Allen K. Smith, his heirs and assigns, to his only use and behoof forever. The said T. H. Whitley and wife, Ida B. Whitley, by this deed relinquish all right, title and interest in and to the said land by virtue of the above deed and no further, said deed made by Isabella R. Fuller."

The mortgage from Mrs. Fuller to Whitley was canceled by Whitley and marked by him satisfied on the record, on 20 April, the day the deed to him was filed for registration.

After the deed to Whitley was executed, the defendant F. G. Fuller rented the land from Whitley and paid him rent therefor, and Mrs. Fuller continued to live in the dwelling-house with her son, she not having ceased to live there since the death of her husband. The defendant Fuller was a tenant of Whitley

at the time Whitley executed deed to Allen K. Smith. The summons in this action was issued 8 January, 1904, within fifteen days after the deed was executed.

In addition to the above facts, the referee found the following additional facts: Mrs. Fuller dissented from her husband's will, and at the public sale the land was bid in for her at $1,500; deed was made to her by the executors; that she did not pay one dollar of the purchase money; that Whitley advanced for her all the purchase price; that she executed a mortgage to him for $1,800; that the $300 included was the amount of a judgment against her husband which had never been paid; that Whitley received the rents from the land; that she and her son lived on the land; that the land depreciated in condition; that she had nothing; that she was about 72 years old and depended for advice upon her son-in-law, Whitley; that she never paid anything on the debt; that at the time she made the deed her son-in-law told her he needed money; that she hesitated about signing the deed; that he did not produce any statement of account showing how much she owed; that he told her if she did not wish to make the deed, not to do so; that she said that if she must she would rather for him to have it than any one else; that her son, F. G. Fuller, was present and witnessed the deed; that Whitley did not pay her anything, and no receipts passed between them; that the rents received by Whitley would very nearly pay the debt due him, and if the fair rental value of the land were applied, she owed him on 1 January, 1905 (exclusive of taxes and repairs), $236; that she had not paid any taxes on the place.

It seems that from the time Mrs. Fuller purchased, 7 January, 1895, to 28 December, 1903, the date of the deed to plaintiff's ancestor, she did not mention to any one that she asserted any claim of title or interest in the real estate.

The referee based his conclusions of law upon the relationship of mortgagor and mortgagee between Mrs. Fuller and Whitley and the presumption of this continued relationship. That the registration of the mortgage deed, though canceled nearly five years before the purchase by plaintiff's ancestor, was sufficient to put him on notice; and that while he paid a fair price for the land, he was affected with notice of Mrs. Fuller's equities and liable to account therefor for all the rents received by Whitley.

Allen K. Smith, Whitley's vendee, died after this suit was commenced, and the present plaintiff, his only heir at law, was made party.

His Honor held, upon the exceptions to the referee's report filed by plaintiff, that plaintiff's ancestor was a purchaser for

value and without notice of Mrs. Fuller's equities, if any, and gave judgment for plaintiff, from which Mrs. Fuller appealed to this Court.

*Pou & Brooks, E. S. Abell, John A. Narron* and *T. H. Calvert* for plaintiff.
*F. S. Spruill* and *Aycock & Winston* for defendant.

MANNING, J.   The defendant Mrs. Isabella R. Fuller admits that the public sale of the land of her husband by his executors was a proper and legal exercise of their powers under his will; that the deed to her was regular and vested in her the legal title to the fee in said land; that she did not pay any part of the consideration recited in the deed to her, but her son-in-law, Whitley, advanced the money for her and in his account as executor charged himself with said sum and accounted for its disbursement.   Mrs. Fuller executed a mortgage to Whitley to secure the payment of the purchase money advanced by him. In 1899, not having herself, as she admits, paid a cent of the mortgage debt, she made a deed to Whitley, witnessed by her son, by which she conveyed to him the fee simple in said land, and on the day the deed was offered for probate Whitley canceled of record the mortgage.   Whitley took possession of the land and F. G. Fuller rented it from him; he paid rent therefor and Mrs. Fuller lived with her son.   In December, 1903, Fuller still occupying the land as tenant, Whitley sold for value—a fair and reasonable price—to Allen K. Smith.

It is not charged that Smith had any notice other than such as the law charged him with by reason of the recorded deeds and his own deed from Whitley disclosed.   Assuming that Smith, before purchasing, examined the records of the county in which the land is situate, to ascertain his chain of title and the existing liens affecting the title, these records would have been discovered: (1) the will of Joseph Fuller; (2) the dissent therefrom of his widow, Isabella R. Fuller; (3) the deed from his executors (executing a power of sale) to Isabella R. Fuller; (4) the deed from Mrs. Fuller to Whitley for $2,000; and (5) the deed from Whitley to himself, referring to the deed from Mrs. Fuller.   It is not denied that the deed from Mrs. Fuller conveyed in form and in terms the unconditional fee simple in the land.

If Smith had inquired of the man in actual possession, he would have ascertained the following facts: (1) That Frank G. Fuller, the coexecutor of Joseph Fuller, the son of Mrs. Isabella R. Fuller, the subscribing witness to her deed to Whitley, occupying the land as the tenant of Whitley and paying him

rent as tenant, and his mother (through whom all the defendants would work out their claims and equities) living with her son, in apparent contentment, and demanding nothing except that she be permitted to live at the old place and in her old home until her death; that the relation of landlord and tenant between Whitley and Fuller had continued for more than four years without dispute and without the suggestion of any other right or equity. The examination of the tax books would have disclosed to Smith the payment of taxes by Whitley and the listing of the land by him.

The answer of the defendants expressly admits that Whitley was in possession of the land; that his possession was uninterrupted and that he received the rents and profits; and the defendants seek, by and through this admitted possession of Whitley, to charge him and his vendee—the plaintiff—with the rents and profits; and, in this way, they claim that the mortgage debt has been practically discharged and they have thus become entitled to the land.

Conceding the soundness of the principle established by the decided weight of authority, that possession by a person other than the vendor, when such possession is open, notorious and exclusive, puts a purchaser upon inquiry and is notice of every fact which he could have learned by proper inquiry (as held by this Court in *Edwards v. Thompson,* 71 N. C., 177; *Staton v. Davenport,* 95 N. C., 12; *Tankard v. Tankard,* 79 N. C., 54; *ibid.,* 84 N. C., 286; *Bost v. Setzer,* 87 N. C., 187; *Johnson v. Hauser,* 88 N. C., 388; *Mfg. Co. v. Hendricks,* 106 N. C., 485; *Patterson v. Mills,* 121 N. C., 258), yet the admitted actual possession was consistent with the paper title, and the possession of *plaintiff's vendor* was open, notorious and exclusive. It is therefore clear that an inquiry by the plaintiff as to the actual possession of the land and the character of that possession would not have discovered to him any right or equity inconsistent with his vendor's legal title; the possession followed the legal title and was in harmony with it. Notice by possession of lands never extends beyond the rights of the occupant and of those under whom he claims. *Roll v. Rea,* 50 N. J. L., 264.

It is not contended that the present plaintiff's ancestor, the vendee of Whitley, had any other notice than such as the record disclosed and such as the law impressed upon him by such records, to wit, constructive notice.

It is not shown by the evidence nor is it alleged that the vendee, Smith, even made an examination of the records; but his title would nevertheless be affected by any infirmity disclosed thereby.

It is not contended that the consideration recited in any of the deeds is inadequate and certainly not so inadequate as to put the purchaser upon inquiry, as in *Durant v. Crowell,* 97 N. C., 367. It is, however, earnestly contended that the presence on the records of the canceled mortgage of Mrs. Fuller to Whitley fixed the plaintiff, Smith, the purchaser, with notice of the relationship of mortgagor and mortgagee between them, and the subsequent deed from this mortgagor to this mortgagee was presumptively fraudulent, and Smith, therefore, was bound to inquire at his peril as to whether the deed was executed freely, without oppression and for a fair and reasonable consideration.

It will be observed that the entry of satisfaction of the mortgage on the record of its registry was made by Whitley, the mortgagee; was in proper form, and was made more than four and one-half years before Smith purchased. This is not the case of the attempted cancellation of a mortgage or deed of trust by a person not authorized to make the entry of satisfaction. An existing, uncanceled mortgage, properly admitted to registration, is constructive notice to subsequent purchasers of the mortgaged premises of the rights of the mortgagee; but a mortgage or deed of trust properly canceled by a person authorized to cancel it, is notice to no one; it continues no lien upon the property. On the contrary, the entry of satisfaction by the proper person is conclusive of the fact of its discharge and satisfaction. A mortgage registered in a manner not authorized by law has been frequently held by this Court to be neither actual nor constructive notice. *De Courcy v. Barr,* 45 N. C., 181; *Todd v. Outlaw,* 79 N. C., 235; *Duke v. Markham,* 105 N. C., 131, and cases approving that case cited in the annotated edition.

The purpose of requiring registration of a mortgage is to give notice to others dealing with the mortgaged premises during the life of the mortgage, of the rights of the mortgagee and the transfer of the title of the mortgaged premises to the mortgagee. *Collins v. Davis,* 136 N. C., 106. It is no purpose of the registry acts to protect the rights of the *mortgagor.* Upon what principle can a subsequent purchaser of property, once covered by a mortgage, but which, long before he deals with it, has been properly canceled and the entry of satisfaction properly entered on the record, be held to a notice of it, in his examination of the records to ascertain the then condition of the title of the property he is negotiating to purchase? If at that time it is not an existing charge upon the property (and the entry of satisfaction by the proper person is to him conclusive that it is not), he has absolutely no concern with it; and no statute and no adjudication of any court that we have discovered re-

quires him to observe it, or affects him with constructive notice
of its presence on the books, and assuredly none of any equities
*dehors* the deed growing out of a relation once existing, but by
the entry of satisfaction properly made conclusively determined,
as to him.   It was never contemplated that such a burden should
be imposed upon a person negotiating for the purchase of real
property, that he should examine not only the record of cancel-
lation of all recorded mortgages, but should read them and be
affected with notice of the relationship of mortgagor and mort-
gagee created by them, and to inquire as to the facts and cir-
cumstances and conditions of such relationship.   This result
would be contrary to that public policy so well expressed by
*Avery, J.,* in the following language: "It has been repeatedly
declared to be sound public policy to remove every obstacle to
the ready sale of real estate upon the market, in order to benefit
commerce and thereby promote general prosperity.   It was in
furtherance of this object that our General Assembly, but a few
years since, so altered our registration laws that persons pro-
posing to purchase land could be well advised as to the title by
a careful inspection of the public records." *Hughes v. Hodges,*
102 N. C., 236 (240).   The same policy was expressed with
equal force and clearness by *Connor, J.,* in *Wood v. Tinsley,*
138 N. C., 507 (575): "The purpose of the statute was to
enable purchasers to rely with safety upon the examination of
the records and act upon the assurance that, as against all per-
sons claiming under the 'donor, bargainor or lessor,' what did
not appear did not exist.   That hardships would come to some
in applying the rigid statutory rule was well known and duly
considered.   *   *   *   The change in our registration laws was
demanded by the distressing uncertainty into which the title to
land had fallen in the State.   No one could say for himself or
advise others with any certainty or safety in regard to a title."

It will be observed that neither in the deed from Mrs. Fuller
to Whitley nor from Whitley to Smith is there any reference
by recital or otherwise to the mortgage.   It was not necessary
to look for it in deraigning title; it was not a muniment of title.
The other admitted facts in this case were calculated to negative
its existence and to throw plaintiff's ancestor off his guard,
rather than put him on notice.

It is undoubtedly true that if, in deraigning title, one deed
refers to another, the purchaser is constructively bound by all
that the deed referred to would have disclosed, and buys subject
to any infirmity there discoverable.   Such was the decision of
the Supreme Court of Kansas in *Frazier v. Jenkins,* 57 L. R.
A., 575, and the Michigan Court in *McKay v. Williams,* 57
Mich., 547 (55 N. W., 159); *Winter v. Truax,* 87 Mich., 324
(49 N. W., 604).

In *McKay v. Williams, supra,* it appeared that an attorney in fact had executed a deed to the land of his principal and on the same day took back a deed to himself and a few weeks thereafter conveyed the land to another. It was thereupon held that the deed by the attorney and the deed back to him were *prima facie* fraudulent on their face; that they did not show the title had passed; that they imparted notice to the subsequent purchaser, and that title could be recovered in ejectment. The other two cases cited were conveyances by a guardian of his ward's land and reconveyance by the purchaser to the guardian. *Froneberger v. Lewis,* 79 N. C., 426. It will be observed that the vitiating fact necessarily appeared in deraigning the title, on the face of the deeds in the chain of title, and in one of the muniments of title (*Holmes v. Holmes,* 86 N. C., 205; *Whitaker v. Fuquay,* 127 N. C., 64). This fact alone is sufficient to distinguish those cases from the case now under consideration.

Another point earnestly urged upon our attention by the defendants is that the deed from Whitley and wife to Allen K. Smith is a quitclaim deed, and being such, is notice to him (Smith) of the equities between Mrs. Fuller and Whitley. While some of the words of the granting clause of the deed would seem to support this contention, the *habendum* and *tenendum* clause is in the words of the usual bargain and sale conveyance, "to have and to hold the aforesaid tract or parcel of land and all privileges and appurtenances thereto belonging, to the said Allen K. Smith, his heirs and assigns, to his only use and behoof forever." If the granting clause purports to grant only the right, title and interest of the grantors, it will be observed that the word "quitclaim," the usual and appropriate word, is not used, and one of the purposes, as laid down by Blackstone, of the *habendum* and *tenendum* clause is to enlarge the estate granted. The warranty clause refers to the deed of Mrs. Fuller to Whitley—a deed absolute and unconditional in form, conveying the fee simple with full covenants of warranty of title; and Whitley and wife warrant the title only as conveyed by this deed. It may be they desired to insert a special and not a general warranty of title, but we cannot see how the language used can be fairly interpreted to convey notice to the vendor's purchaser of the vendor's fraud in acquiring the very land sold.

In *Mansfield v. Dyer,* 131 Mass., 200, the Court said that taking a quitclaim deed is not of itself sufficient to charge the grantee with notice that the grantor's title was procured by fraud. In *Moelle v. Sherwood,* 148 U. S., 21, the Court says: "The doctrine expressed in many cases, that the grantee in a quitclaim deed cannot be treated as a *bona fide* purchaser, does not seem to rest upon any sound principle."

There is no question raised by the defendant Mrs. Fuller of the effect of the deed from the executors to her upon her right of dower, or the effect of her deed to Whitley or of Whitley's deed to the plaintiff's ancestor upon her right of dower. After her dissent was filed, it seems that Mrs. Fuller took no further steps to have her dower allotted to her in the manner prescribed by law.

After a careful consideration of all the authorities cited by the learned counsel for the defendants in their well-considered brief, we have reached the conclusion that there was no error in the judgment of the court below, and the same is

Affirmed.