DONNA L. BROWN, WESLEY R. BROWN AND WIFE, MARTEE U. BROWN, JACK M. FISHER AND WIFE, CATHEY G. FISHER, ANTHONY N. HUBBARD AND WIFE, FRANCES M. HUBBARD, JAMES M. MECUM, JR., GARNETT L. MIDKIFF, JR., E. RAYMOND NICHOLSON, DONALD W. PETERS, G. FLOYD SIDES AND WIFE, JO ANN SIDES, PLAINTIFFS v. CITY OF WINSTON-SALEM, ALLEN JOINES, MAYOR, VIVIAN H. BURKE, DAN BESSE, ROBERT C. CLARK, JOYCELYN V. JOHNSON, NELSON L. MALLOY, JR., VERNON ROBINSON, WANDA MERSCHEL AND FREDERICK N. TERRY, CITY COUNCIL MEMBERS, DEFENDANTS

No. COA04-1245

(Filed 5 July 2005)

**1. Appeal and Error— appealability—annexation—partial summary judgment—judicial economy—convenience and preferences of parties**

An interlocutory appeal from an involuntary annexation was considered under Rule 2 in the interest of judicial economy; however, the convenience and preferences of the parties are not proper considerations in deciding whether to hear an interlocutory appeal.

**2. Appeal and Error— standard of review—summary judgment**

The standard of review for summary judgment is whether there is a genuine issue of material fact, with the evidence viewed in the light most favorable to the moving party and with the appellate court conducting a de novo review.

**3. Cities and Towns— involuntary annexation—equal protection**

The Court of Appeals did not consider an alleged equal protection violation arising from an involuntary annexation because the North Carolina Supreme Court and other panels of the Court of Appeals have decided the issue.

BROWN v. CITY OF WINSTON-SALEM

[171 N.C. App. 266 (2005)]

**4. Cities and Towns— involuntary annexation—city charter—general statutes**

Under N.C.G.S. § 160A-3(c), the statutory provision allowing involuntary annexations supercedes the Winston-Salem Charter provision permitting only voluntary annexations.

**5. Cities and Towns— involuntary annexation—notice of meetings**

Summary judgment should have been granted for defendants in an involuntary annexation dispute where plaintiffs alleged inadequate notice but did not respond to defendants' affidavits.

**6. Open Meetings— involuntary annexation—Open Meetings Law—notice**

Summary judgment should have been granted for defendants in an involuntary annexation dispute where plaintiffs alleged inadequate notice under the Open Meetings Law, but did not file affidavits contrary to those of defendant showing proper notice. Evidence that meetings were improperly reported was not evidence that the City failed to give proper notice.

Judge STEELMAN dissenting.

Appeal by plaintiffs and defendants from an order entered 4 February 2004 by Judge John O. Craig, III, in Forsyth County Superior Court. Heard in the Court of Appeals 22 April 2005.

*Richard J. Browne for plaintiff appellants-appellees.*

*Womble Carlyle Sandridge & Rice, PLLC, by Roddey M. Ligon, Jr., and the Office of the Winston-Salem City Attorney, by Ronald G. Seeber and Charles C. Green, Jr., for defendant appellant-appellees.*

McCULLOUGH, Judge.

Plaintiffs, citizens of an area which the City of Winston-Salem is seeking to annex, appeal from a superior court order granting partial summary judgment in defendants' favor. Defendants, the City of Winston-Salem, its Mayor and City Council members, appeal from the partial denial of their motion for summary judgment. For the reasons set forth below, we address the parties' arguments pursuant to Rule 2 and Rule 21 of the North Carolina Rules of Appellate Procedure, and conclude that the trial court's order must be affirmed in part and reversed in part.

I.

At a special meeting held on 23 June 2003, the City Council of Winston-Salem, North Carolina, adopted annexation ordinances designed to extend the City's corporate limits to include, *inter alia*, real property owned by plaintiffs. For the purposes of this annexation, the City Council elected not to rely upon the voluntary annexation procedure provided for in its charter and instead relied upon the procedures set forth in N.C. Gen. Stat. § 160A-49 to conduct an involuntary annexation.

On 22 August 2003, plaintiffs filed a complaint in superior court in which they set forth three claims. In their first claim (Claim I), plaintiffs asserted that they were being denied equal protection under the law, as guaranteed by the North Carolina Constitution, in that the Legislature has elected to require voter approval for certain municipal annexations while not including such a limitation in the general annexation laws codified in Article 4A of Chapter 160A of the General Statutes. In their second claim (Claim II), plaintiffs sought a declaration that the Winston-Salem City Charter, rather than N.C. Gen. Stat. § 160A-45, *et seq.*, governed the challenged annexation such that voter approval for the border extension was required. In their third claim (Claim III), plaintiffs averred that the City Council failed to provide proper notice for certain special meetings at which the annexation issue was discussed and voted upon.

Defendants filed a motion for summary judgment, along with affidavits in support of the motion. By an order entered 4 February 2004, the trial court granted the defendants' motion for summary judgment with respect to Claims I and II, and denied defendants' motion for summary judgment with respect to Claim III. Plaintiffs and defendants have appealed from this order.

II.

[1] At the outset, we note that the challenged order granted partial summary judgment and thus left issues to be resolved at trial. Therefore, the order is interlocutory. *See Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993) (noting that partial summary judgment is interlocutory). Furthermore, the trial court did not certify that there is no just reason for delaying the parties' appeals and the present case does not involve a substantial right. *See* N.C. Gen. Stat. § 1A-1, Rule 54(b) (2003) ("[T]he court may enter a final judgment as to one or more but fewer than all of the claims or parties

## BROWN v. CITY OF WINSTON-SALEM

[171 N.C. App. 266 (2005)]

only if there is no just reason for delay and it is so determined in the judgment."); *Liggett Group*, 113 N.C. App. at 23-24, 437 S.E.2d at 677 (noting that judicial review is appropriate where an interlocutory appeal involves a substantial right). Therefore, dismissal of the parties' appeals would be appropriate.

In their briefs, plaintiffs and defendants have requested that we decide the present case because "[the] parties wish to have [this] Court take and decide the case without requiring further hearings" and "resolution of the three issues . . . can . . . be easily resolved." The convenience of deciding appellate arguments and the preferences of the parties are not proper considerations for this Court in determining whether to hear an interlocutory appeal. As such, we admonish the attorneys as to the impropriety of using these proffered bases for review and note that we are not entertaining the instant interlocutory appeal to accommodate the parties.

However, our examination to determine the existence or nonexistence of a substantial right has revealed that the unique posture of the present case counsels in favor of appellate disposition. Specifically, the trial court correctly granted summary judgment with respect to Claims I and II, and erred by denying summary judgment in defendants' favor with respect to Claim III. Accordingly, if this Court were to dismiss the present appeals as interlocutory, then Claim III would proceed to trial, after which the parties would likely appeal to this Court again. This additional litigation would be a waste of judicial resources. Furthermore, the resulting delay would be especially inappropriate given that the instant litigation concerns a matter of public interest.

Rule 2 of the North Carolina Rules of Appellate Procedure permits this Court to suspend or vary the requirements of the Rules "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest." We exercise our authority under Rule 2 to consider the parties' appeals as petitions for *certiorari,* and we grant *certiorari* to review the trial court's interlocutory order. *See* N.C. R. App. P. 21(a) ("The writ of certiorari may be issued in appropriate circumstances by [an] appellate court to permit review . . . when no right of appeal from an interlocutory order exists . . . ."); *Kimzay Winston-Salem, Inc. v. Jester,* 103 N.C. App. 77, 79, 404 S.E.2d 176, 177 (using Rule 2 to treat an appeal from an interlocutory order as a petition for a writ of *certiorari*), *disc. review denied,* 329 N.C. 497, 407 S.E.2d 534-35 (1991).

## III.

[2] We begin our analysis of the parties' arguments with the standard of review. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). On a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party." *Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 775 (1998) (citation omitted). When determining whether the trial court properly ruled on a motion for summary judgment, this court conducts a *de novo* review. *Va. Electric and Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986).

## IV.

### A.

[3] We first consider plaintiffs' arguments. In their first argument, plaintiffs contend that the trial court erred by granting summary judgment to defendants with respect to Claim I, which asserted a state constitutional equal protection violation. In their brief, plaintiffs cite authority from our Supreme Court and this Court which is contrary to the position they have taken throughout the instant litigation and concede that "[the] North Carolina [appellate] courts have consistently held that the annexation statutes do not deny any qualified voter in this state the [e]qual [p]rotection of the law under [either] the federal [or] state constitutions." Notwithstanding this contrary authority, plaintiffs request that this Court "exercise its prerogative to revisit the [e]qual [p]rotection issue."

This Court has no authority to overrule decisions of our Supreme Court and has the responsibility to follow those decisions until otherwise ordered by the Supreme Court. *Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993). Likewise, "[w]here a panel of [this] Court . . . has decided the same issue, albeit in a different case, a subsequent panel . . . is bound by that precedent, unless it has been overturned by a higher court." *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

Accordingly, we are unable to revisit the equal protection issue argued by plaintiffs. This assignment of error is overruled.

**BROWN v. CITY OF WINSTON-SALEM**

[171 N.C. App. 266 (2005)]

## B.

**[4]** Plaintiffs next contend that the trial court erred by granting summary judgment in favor of defendants with respect to Claim II, in which plaintiffs asserted that the Winston-Salem City Charter, as opposed to the general annexation laws, applied and required voter approval of the challenged annexation. We disagree.

In 1947, the General Assembly amended the Winston-Salem City Charter to permit the City to extend its borders, subject to a "vote of the qualified voters of [the] [C]ity . . . and of the territory to be annexed." Winston-Salem, N.C., City Charter art. I, § 2 (enacted by 1947 N.C. Sess. Laws ch. 710). Pursuant to the Charter, the Forsyth County Board of Elections must conduct the election. *Id.* Subsequently, the General Assembly enacted Chapter 160A, Article 4A, Part 3 of the North Carolina General Statutes, which allows large North Carolina municipalities to extend their borders without first conducting an election. *See, e.g.*, 1959 N.C. Sess. Laws ch. 1009, § 5; 1973 N.C. Sess. Laws ch. 426, § 74; 1983 N.C. Sess. Laws ch. 636. Thus, the Winston-Salem City Charter, by requiring an election, limits the power of annexation in a way that the subsequently enacted general annexation laws do not.

The interplay between city charters and the general law of this State is governed by the following rules:

(a) When a procedure that purports to prescribe all acts necessary for the performance or execution of any power, duty, function, privilege, or immunity is provided by both a general law and a city charter, the two procedures may be used as alternatives, and a city may elect to follow either one.

(b) When a procedure for the performance or execution of any power, duty, function, privilege, or immunity is provided by both a general law and a city charter, but the charter procedure does not purport to contain all acts necessary to carry the power, duty, function, privilege, or immunity into execution, the charter procedure shall be supplemented by the general law procedure; but in case of conflict or inconsistency between the two procedures, the charter procedure shall control.

(c) When a power, duty, function, privilege, or immunity is conferred on cities by a general law, and a charter enacted earlier than the general law omits or expressly denies or limits the same

power, duty, function, privilege or immunity, the general laws shall supersede the charter.

N.C. Gen. Stat. § 160A-3 (2003).

In the instant case, the Winston-Salem City Charter requires action by the Forsyth County Board of Elections, which also derives authority from, and is subject to limitations by, authorities other than the Charter. It follows, plaintiffs contend, that the Charter does not contain "all acts necessary" to conduct the annexation such that, pursuant to N.C. Gen. Stat. § 160A-3(b), the General Statutes' involuntary annexation procedure is supplemental to the Charter and the Charter supercedes the General Statutes to the extent there is conflict between the two.

We need not address whether the Charter contains "all acts necessary" to conduct an annexation because subsection (c) of N.C. Gen. Stat. § 160A-3 applies in the instant case. The power to annex is conferred upon the City in its Charter and by the General Statutes. The Charter was enacted prior to the applicable provisions of the General Statutes and contains a limitation on the power to annex that the general law does not: the requirement that a proposed annexation be approved in an election. Pursuant to N.C. Gen. Stat. § 160A-3(c), the statutory provision establishing involuntary annexations supercedes the Charter provision permitting only voluntary annexations.

Accordingly, the trial court properly granted summary judgment to defendants with respect to Claim II. This assignment of error is overruled.

V.

[5] We next address defendants' only argument, in which they contend that the trial court erroneously denied their motion for summary judgment with respect to Claim III, which alleged insufficient notice was given for certain special meetings of the City Council at which the annexation plan was discussed and voted upon. We hold that this ruling was erroneous.

Claim III concerned the notice with respect to two City Council meetings. The City Council held a special meeting on 11 June 2003 to consider the annexation, and held a special meeting on 23 June 2003 to vote on the annexation plan. The Council also planned to hold meetings on 25, 26 and 30 June 2003 in the event that the vote on the annexation was delayed by procedural measures. However, the an-

nexation plan was adopted at the 23 June meeting, and meetings were not held on 25, 26, or 30 June. In their complaint, plaintiffs alleged that, "[c]ontrary to [language in the motion to call the 11 June 2003 special meeting], no written notice of the . . . meeting was posted, mailed or delivered," and that the City had violated the Open Meetings Law by providing notice for the 25, 26 and 30 June meetings in a way that confused the public about whether the 23 June meeting was still going to be held.

Along with their motion for summary judgment, defendants filed the affidavit of City Secretary Renee P. Rice, in which she stated the following:

2. During the June 2, 2003 special meeting of the Winston-Salem City Council a motion was approved to call a special meeting of the City Council on June 11, 2003 at 5:30 p.m. to consider a revised annexation plan.

3. On June 10, 2003 a notice for the June 11, 2003 and June 23, 2003 special meetings of the Winston-Salem City Council was delivered by facsimile to all media and others on the notice request list. A true copy of said notice is attached hereto and made a part hereof.

4. During the June 11, 2003 special meeting of the Winston-Salem City Council a motion was approved to call a special meeting of the City Council on June 23, 2003 at 7:30 p.m. for the purpose of taking action on the proposed annexation.

5. On June 23, 2003 the Winston-Salem City Council held a special meeting to consider (1) amending the annexation report related to the proposed annexations, and (2) adopting annexation ordinances . . . . The special meeting of June 23, 2003 was scheduled at the Council meeting of June 11, 2003 in open session. No public hearing was scheduled for the special meeting of June 23, 2003 because the required public hearing related to the proposed annexations had already been held on May 27, 2003.

6. On June 23, 2003 the Mayor of the City of Winston-Salem issued a call for special meetings of the Winston-Salem City Council to be held on June 25, 26, and 30, 2003 to consider proposed annexation issues. On the morning of June 23, 2003, my office duly notified the media of the scheduling of these spe-

cial meetings. At no time did my office distribute any notice to anyone stating that the special meeting scheduled for June 23, 2003 had been cancelled or that the City Council's consideration of any annexation issue had been postponed.

7. The purpose for calling the special meetings for June 25, 26, and 30, 2003 was to provide an opportunity for the Winston-Salem City Council to further consider amendment of the annexation report and adoption of the proposed annexation ordinances in the event consideration of these matters was delayed by procedural rules or if a second reading of the proposed annexation ordinances became necessary.

8. At the June 23, 2003 special meeting, the Winston-Salem City Council duly amended the annexation report and adopted the proposed annexation ordinances on first reading. Thus the special meeting schedule of June 25, 26, and 30, 2003 was never held.

Defendants also filed the affidavit of Pat Gentry, an employee in the City's Marketing and Communications Department tasked with examining local periodicals for items related to the City. Gentry attached a number of newspaper articles, published 16, 17 and 23 June 2003, which reported that the 23 June 2003 meeting was going to be held.

Prior to the hearing of the present appeal, plaintiffs moved to amend the record to include the affidavit of Benjamin T. Hoover. According to Hoover, he had planned to attend the 23 June 2003 special meeting of the City Council but did not do so because a newscast on a local television station reported that the station had just received notice from the City that the meeting had been postponed. Plaintiffs also sought to include a videotape of the alleged newscast and a transcript of the summary judgment hearing. This Court denied the motion to add these items to the record on appeal. Thus, the record contains no affidavit filed by plaintiffs in response to the affidavits filed by defendants.

"When a motion for summary judgment is made and supported . . . , an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or . . . otherwise . . . , must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." N.C. Gen. Stat. § 1A-1,

**BROWN v. CITY OF WINSTON-SALEM**

[171 N.C. App. 266 (2005)]

Rule 56(e) (2003). The present plaintiffs' complaint asserts two separate failures by the City to provide notice for meetings. Plaintiffs have failed to meet their burden under N.C. Gen. Stat. § 1A-1, Rule 56(e) with respect to each allegation.

The complaint first alleges that the City Council failed to comply with its self-imposed requirement to provide written notice for the 11 June 2003 meeting. However, defendants filed an affidavit in which the City Secretary asserted that she did provide written notice for this meeting. Plaintiffs failed to file any affidavit disputing the City Secretary's affidavit. Therefore, summary judgment should have been granted to defendants with respect to this allegation.

[6] The complaint also alleges that the notification for the 23 June 2003 meeting violated the North Carolina Open Meetings Law. Under the Open Meetings Law, the City was required to provide written notice of the 23 June special meeting no less than forty-eight hours in advance. N.C. Gen. Stat. § 143-318.12(b)(2) (2003). Defendants presented affidavits which showed that the City had provided the required notice to the local media. The record contains no contrary affidavits from plaintiffs. Moreover, even assuming *arguendo* that the Hoover affidavit and the related videotape were presented to the trial court, these items do not contradict the affidavits offered by the defendants. Rather, the Hoover affidavit and the videotaped newscast demonstrate, at best, that erroneous information was reported about whether the City Council was going to meet on 23 June 2003; these items do not show that the City failed to give proper notice of the meeting.

Therefore, the trial court erred by failing to grant summary judgment in defendants' favor with respect to Claim III. The trial court's denial of defendant's motion for summary judgment with respect to this claim is reversed.

For the foregoing reasons, the trial court's order is

Affirmed in part and reversed in part.

Judge TIMMONS-GOODSON concurs.

Judge STEELMAN dissents.

STEELMAN, Judge dissenting.

I agree with the majority's discussion of the interlocutory nature of both appeals contained in part II of the opinion, but disagree with the manner in which the majority resolves this issue.

There has been a disturbing trend in recent years of parties appealing interlocutory orders of the trial court where no right of appeal exists under either N.C. Gen. Stat. § 1-277 or N.C. Gen. Stat. § 7A-27(d). As noted by the majority, the parties in this case have candidly acknowledged the questionable legal basis for their appeals. The majority chastises the parties for their conduct and then in the interests of judicial economy utilize Rules 2 and 21 of the North Carolina Rules of Appellate Procedure to hear both appeals. I respectfully suggest that creating a way to hear an improper interlocutory appeal·does nothing but encourage such conduct by parties in the future.

Both Rule 2 and Rule 21 are discretionary rules. This Court does have the discretion to hear and rule on both of the appeals in this matter. However, I question the wisdom of doing so in this case. There are numerous appeals which this Court has dismissed as being interlocutory during the year 2005, to date. *See e.g. Hinson v. Jarvis*, 170 N.C. App. 697, 614 S.E.2d 608 (2005) (unpublished); *State Auto. Mut. Ins. Co. v. Iadanza*, 170 N.C. App. 437, 613 S.E.2d 753 (2005) (unpublished); *Grant v. Miller*, 170 N.C. App. 184, 611 S.E.2d 477 (2005); *Milton v. Thompson*, 170 N.C. App. 176, 611 S.E.2d 474 (2005); *In re B.P.*, 169 N.C. App. 728, 612 S.E.2d 328 (2005); *Atwood v. Eagle*, 169 N.C. App. 255, 611 S.E.2d 899 (2005) (unpublished); *N.C. Dep't of Transp. v. Williams*, 168 N.C. App. 728, 609 S.E.2d 498 (2005) (unpublished); *Johnson v. Lucas*, 168 N.C. App. 515, 608 S.E.2d 336 (2005); *Mech. Sys. & Servs. v. Carolina Air Solutions*, 168 N.C. App. 240, 607 S.E.2d 55 (2005) (unpublished); *Neill Grading & Constr. Co. v. Lingafelt*, 168 N.C. App. 36, 606 S.E.2d 734 (2005); *Stewart v. N.C. Dep't of Juvenile Justice*, 167 N.C. App. 808, 606 S.E.2d 458 (2005) (unpublished); *Robinson v. Gardner*, 167 N.C. App. 763, 606 S.E.2d 449 (2005).

Unless the Rules of Appellate Procedure are consistently applied they become meaningless. *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005).