**LEGACY VULCAN CORP. v. GARREN**

[222 N.C. App. 445 (2012)]

LEGACY VULCAN CORP., F/K/A VULCAN MATERIALS COMPANY, Plaintiff Appellant
v. MARY LYNN GARREN, EXECUTRIX OF THE ESTATE OF HARRY C. GARREN;
LARRY S. HARTLEY, TRUSTEE OF THE HARRY C. GARREN ADMINISTRATIVE
TRUST; JAMES L. CARTER; TAVA ORR CARTER; BOYD L. HYDER; AND ANGELA
S. BEEKER, TRUSTEE, Defendants-Appellees

No. COA11-1478

(Filed 21 August 2011)

**1. Appeal and Error—interlocutory order—summary judgment —remaining defendant—treated as petition for certiorari**

A summary judgment for all but one of the defendants remaining in an action was an interlocutory order but the appeal was treated as a petition for *certiorari* under Rule 2 of the Rules of Appellate Procedure. Nothing in the record indicated that the remaining defendant received a final judgment or that she had been dismissed from this action, but dismissing the appeal as interlocutory would likely waste judicial resources.

**2. Real Property—notice of preemptive rights—not sufficient**

The trial court correctly granted defendants' motion for summary judgment and denied plaintiff's motion for summary judgment in an action against an estate and trustees for specific performance arising from an interwoven real estate transaction involving an option to purchase, an exchange of the option property for a second tract, and a right of first-refusal for a third tract that was not dependent on the exercise of the option. The issue was whether defendants had notice of plaintiff's preemptive rights: the only reasonable interpretation of a memorandum of agreement that was recorded and re-recorded was that all of plaintiff's rights expired on 31 December 1996, more than a decade before the transaction at issue here. Defendants were not required to draw inferences from the timing of the recordings, nor was language in the memorandum referring to the sequence of recording sufficient to arouse suspicion in a reasonable person performing a title search.

Appeal by Plaintiff from order entered 17 August 2011 by Judge Gary M. Gavenus in Superior Court, Henderson County. Heard in the Court of Appeals 24 April 2012.

*Womble Carlyle Sandridge & Rice, by Reid C. Adams, Jr. and James A. Dean, for Plaintiff-Appellant.*

*Prince, Youngblood & Massagee, PLLC, by Sharon B. Alexander,
for Defendants-Appellees.*

McGEE, Judge.

Legacy Vulcan Corporation (Plaintiff) filed a complaint on 23 November 2009 against Mary Lynn Garren, Executrix of the Estate of Harry C. Garren; Larry S. Hartley, Trustee of the Harry C. Garren Administrative Trust; James L. Carter; Tava Orr Carter; Boyd L. Hyder; and Angela S. Beeker, Trustee of a Deed of Trust (collectively, Defendants), seeking specific performance, or in the alternative, invalidation of a deed and purchase money deed of trust, and damages for breach of contract. Defendant James L. Carter also filed a cross-claim against Defendant Mary Lynn Garren and Defendant Larry S. Hartley.

Plaintiff voluntarily dismissed without prejudice all claims against Defendants Garren and Hartley on 26 July 2010. However, Defendants Garren and Hartley remain parties to the lawsuit as cross-defendants based on the cross-claim filed against them by Defendant James L. Carter. The success of this cross-claim is contingent upon Plaintiff's receiving a favorable outcome in this appeal.

Defendants James L. Carter, Tava Orr Carter, and Boyd L. Hyder filed a motion for summary judgment against Plaintiff on 20 July 2011. Plaintiff filed a motion for summary judgment with respect to Plaintiff's claim for specific performance against Defendants James L. Carter, Tava Orr Carter, and Boyd L. Hyder on 21 July 2011. Defendant Angela S. Beeker did not file a motion for summary judgment, but did file an affidavit in opposition to summary judgment. The trial court entered an order granting summary judgment in favor of Defendants James L. Carter, Tava Orr Carter, and Boyd L. Hyder against Plaintiff. Defendant Beeker was not named in the trial court's order granting summary judgment.

## I. Grounds for Appellate Review

[1] "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). In the present case, it is not clear from the record what, if any, relief Plaintiff has sought, or seeks, against Defendant Beeker. Nothing in the record indicates that Defendant Beeker received a final judgment or that she has been dismissed from this action. *See*

*Pentecostal Pilgrims & Strangers Corp. v. Connor*, 202 N.C. App. 128, 131, 688 S.E.2d 81, 83 (2010) (noting that "[T]he [superior] court's grant of [a defendant's] motion to dismiss was not a final judgment as to all parties to the litigation and, as such, the order was interlocutory.").

However, pursuant to Rule 2 of the N.C. Rules of Appellate Procedure, this Court may, on its own initiative, "suspend or vary the requirements or provisions" of the rules of appellate procedure in order "to expedite decision in the public interest[.]" N.C.R. App. P. 2. Further, N.C.R. App. P. 21 provides:

> The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists[.]

N.C.R. App. P. 21(a)(1) (2011). We believe that dismissing this appeal as interlocutory would likely waste judicial resources. *See Brown v. City of Winston-Salem*, 171 N.C. App. 266, 269, 614 S.E.2d 599, 601 (2005) (granting *certiorari* where there was the potential for "additional litigation [which] would be a waste of judicial resources"). Further, we believe our decision will, in effect, resolve all legal issues in dispute. We exercise our authority under Rule 2 to consider Plaintiff's appeal as a petition for *certiorari*, and we grant *certiorari* to review the trial court's interlocutory order. *See Brown*, 171 N.C. App. at 269, 614 S.E.2d at 601.

## II. Factual Background

Plaintiff operates a quarry in Henderson County, North Carolina. The record reveals that Plaintiff entered into an agreement (the Agreement) with Defendant Harry C. Garren (Mr. Garren) on 2 July 1996. The Agreement was titled "Option Agreement and Right of First Refusal" and specified the rights related to the following three tracts of real property: (1) an 8.83-acre tract of land located to the southeast of Plaintiff's property (the Option property); (2) an approximately 4-acre tract of land located to the west of Plaintiff's property (the Trade property); and (3) an approximately 16-acre tract of land located to the northwest of Plaintiff's property (the Refusal property).

Under the Agreement, Plaintiff was also given an option to purchase the Option property on or before 31 December 1996. This option to purchase allowed Plaintiff to obtain the Option property in exchange for the Trade property, while reserving a right of first

refusal on the Trade property. The right of first refusal on the Trade property only became operative if and when Plaintiff exercised its option. The Agreement also gave Plaintiff a right of first refusal over the Refusal property regardless of whether Plaintiff exercised its right to obtain the Option property.

A document titled "Memorandum of Option Agreement and Right of First Refusal" (the Memorandum) was recorded on 31 July 1996. Plaintiff exercised its option, and took possession of the Option property in exchange for the Trade property on 22 October 1996. The Memorandum was re-recorded on 18 November 1996.

Mr. Garren died on 26 September 2008. Defendants Mary Lynn Garren and Larry S. Hartley sold a portion of the Refusal property and the entire Trade property (collectively, the Contract property) to Defendants James L. Carter, Tava Orr Carter, and Boyd L. Hyder on 14 May 2009. In its original complaint, Plaintiff alleged that it was not notified of the pending sale or afforded an opportunity to exercise its right of first refusal.

Plaintiff appeals from the order granting summary judgment in favor of Defendants James L. Carter, Tava Orr Carter, and Boyd L. Hyder, and denying Plaintiff's motion for summary judgment.

### III. Issue on Appeal and Standard of Review

Plaintiff raises the issue on appeal of whether the trial court erred by granting summary judgment in favor of Defendants and by failing to grant summary judgment in favor of Plaintiff. "Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted).

### IV. Entry of Summary Judgment

[2] Plaintiff contends there are two "similar but independent . . . grounds to reverse the order below." First, Plaintiff argues that we should "reaffirm the established principle that a party searching the title to real property has constructive notice, as a matter of law, of recorded instruments and of unrecorded documents referenced therein." Second, Plaintiff contends that "even if Defendants were not on notice of the right of first refusal as a matter of law, there is a genuine issue of material fact regarding whether the memorandum

and other recorded documents disclosed sufficient facts to put Defendants on inquiry notice of the Right of First Refusal."

We first note that a right of first refusal is a "preemptive right" that " 'requires that, before the property conveyed may be sold to another party, it must first be offered to the conveyor or his heirs, or to some specially designated person.' " *Smith v. Mitchell*, 301 N.C. 58, 61, 269 S.E.2d 608, 610 (1980) (citations omitted). The holder of a preemptive right may "enforce that preemptive right against subsequent purchasers for value who are charged with notice of the right in the recorded chain of title . . . provided there is no equitable matter precluding this ability." *Id.* at 68, 269 S.E.2d at 614 (citation omitted).

However, to bind future purchasers of the real property, a purchaser must have actual or constructive knowledge of the preemptive right. Plaintiff relies on *Morehead v. Harris*, 262 N.C. 330, 137 S.E.2d 174 (1964) to argue that Defendants should be charged with notice in this case. In *Morehead*, our Supreme Court stated that:

> "A person is as a general rule charged with notice of what appears in the deeds or muniments in his grantor's chain of title, including . . . instruments to which a conveyance refers. . . Under this rule, the purchaser is charged with notice not only of the existence and legal effects of the instruments, but also of every description, recital, reference, and reservation therein. . . . If the facts disclosed in a deed in the chain of title are sufficient to put the purchaser on inquiry, he will be charged with notice of what a proper inquiry would have disclosed."

*Id.* at 340, 137 S.E.2d at 183 (citation omitted). The Supreme Court further stated that:

> Where the defense of 'innocent purchaser' is interposed and there has been a bona fide purchase for a valuable consideration, the matter which debases the apparent fee must have been expressly or by reference set out in the muniments of record title or brought to the notice of the purchaser *in such a manner as to put him upon inquiry.* An innocent purchaser takes title free of equities of which he had no actual or constructive notice.

*Id.* at 342, 137 S.E.2d at 185 (emphasis added). *See also Perkins v. Langdon*, 237 N.C. 159, 167-68, 74 S.E.2d 634, 641 (1953) ("[O]rdinarily where a party has information which is reasonably calculated to excite attention and stimulate inquiry, he is charged with constructive notice of all that reasonable inquiry would have disclosed[.]").

We must determine if there is a genuine issue of material fact as to whether Defendants were on notice of Plaintiff's preemptive rights. We must further decide whether Defendants can be charged with actual or constructive notice of Plaintiff's preemptive rights.

In the present case, Plaintiff's right of first refusal was not "brought to the notice of the purchaser in such a manner as to put [Defendants] upon inquiry" of Plaintiff's rights. The Memorandum refers to both Plaintiff's right of first refusal and Plaintiff's option rights as "the Option." The first paragraph specified that Plaintiff had "an option to purchase" the Option property. Paragraph 2 of the Memorandum specified that: "The term of the Option is for a period of six (6) months to and including the 31st day of Dec, 1996." Paragraph 3 of the Memorandum states that: "The *Option* grants Buyer a right of first refusal to purchase or lease the real estate described in Exhibit 'B' and Exhibit 'C' attached hereto and incorporated herein by reference." (emphasis added). No other dates, aside from the dates of recording, are referenced in the memorandum agreement.

Plaintiff argues that "[t]he logical way to read the memorandum . . . is to interpret the term 'Option' as 'option to purchase' in Paragraphs 1 and 2 and as 'Option Agreement & Right of First Refusal' in Paragraph 3." Such an interpretation would assign different meanings to the same term within a legal document. We do not believe this is a reasonable interpretation. The parenthetical indication, along with the consistent capitalization, indicates that the meaning of the phrase "the Option" was intended to have the same meaning throughout the Memorandum. *Cf. Lowder, Inc. v. Highway Comm.*, 26 N.C. App. 622, 639, 217 S.E.2d 682, 693 (1975) ("[C]ontract provisions should not be construed as conflicting unless no other reasonable interpretation is possible."). Here, the only reasonable construction apparent from the face of the document is that all of Plaintiff's rights referenced by the Memorandum expired on 31 December 1996, more than a decade before the 2009 transaction at issue.

"Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms."

*Hodgin v. Brighton*, 196 N.C. App. 126, 128, 674 S.E.2d 444, 446 (2009) (citation omitted).

Therefore, a title search of the property, if completed in 2009 when the transaction at issue occurred, would indicate only that Plaintiff's rights under the "Option" had expired more than ten years prior to the transaction at issue. Rather than exciting the attention of a reasonable person, the Agreement *negates* the need for further inquiry on the part of the title searcher.

We find support for this position in *Smith v. Fuller*, 152 N.C. 7, 67 S.E. 48 (1910). *Smith* addressed the question of whether the presence on the record of a canceled mortgage was sufficient to place a subsequent purchaser on notice of a mortgagor/mortgagee relationship. *Id.* at 13, 67 S.E. at 51. The Supreme Court did not consider the appearance of a canceled mortgage on the record to be sufficient to charge the purchaser with notice, writing:

> Upon what principle can a subsequent purchaser of property, once covered by a mortgage, but which long before he deals with it, has been properly canceled and the entry of satisfaction properly entered on the record, be held to a notice of it, in his examination of the records to ascertain the then condition of the title of the property he is negotiating to purchase? If at that time it is not an existing charge upon the property (and the entry of satisfaction by the proper person is to him conclusive that it is not), he has absolutely no concern with it; and no statute and no adjudication of any court that we have discovered requires him to observe it, or affects him with constructive notice of its presence on the books, and assuredly none of any equities *dehors* the deed growing out of a relation once existing, but by the entry of satisfaction properly made conclusively determined as to him.

*Smith*, 152 N.C. at 13-14, 67 S.E. at 51. In the present case, as in *Smith*, the record did not indicate that there was an existing charge upon the real property.

Plaintiff cites the following language that, at the time of the re-recording of the Memorandum, was printed on the Memorandum: "To record in proper sequence so that future title search would not miss this encumbrance[.]" Plaintiff contends that this language "alone[] should have aroused sufficient suspicion to cause Defendants to review the Agreement." Plaintiff does not cite any authority for this proposition, and we find none. We do not believe that the presence of this language would have aroused suspicion in a reasonable person performing a title search.

Plaintiff also argues that the "[s]equencing of the [M]emorandum's filing put Defendants on inquiry notice that there was an outstanding Right of First Refusal." Plaintiff argues that, because the Memorandum was re-recorded on 18 November 1996, Defendants should have been able to intuit that Plaintiff retained an interest in the real property other than the option. Defendants were not required to draw inferences from the timing of the recordings. This does not give notice of Plaintiff's preemptive rights by expressly noting those rights or by referencing them in the Memorandum. *See Morehead*, 262 N.C. at 340, 137 S.E.2d at 183. Nor was the sequencing "reasonably calculated to excite attention and stimulate inquiry" by Defendants. *See Perkins*, 237 N.C. at 167, 74 S.E.2d at 641. Therefore, the sequencing is not sufficient information to charge Defendants with notice.

The trial court correctly granted Defendants' motion for summary judgment and denied Plaintiff's motion for summary judgment.

Affirmed.

Judges STEPHENS and HUNTER, JR. concur.